# Foster *v.* The State.

## *Indictment for Selling Mortgaged Property.*

1. *Jeopardy; unauthorized discharge of jury.*—In a criminal prosecution, the defendant is placed in legal jeopardy when his case is submitted to the jury; and the discharge of the jury without his consent, and without lawful excuse, before they have rendered a verdict, or having rendered a verdict which is a nullity, is a bar to another prosecution; but not when the verdict is only irregular or incomplete.

2. *Verdict of guilty as to part of offense charged.*—Under an indictment for selling or removing mortgaged property, alleged to consist of a cow and calf and 900 pounds of seed-cotton, a verdict finding the defendant "guilty of removing 500 pounds of seed-cotton, valued at $12.50," is not a nullity, but is an acquittal as to the cow and calf; and a new trial being granted at the instance of the defendant, he can only be tried again for the removal of the cotton.

3. *Transcript.*—The court comments on the transcript filed in this case, which contains many blank spaces for words (presumably) not understood by the copyist, obvious mistakes of one word for another, and an air of general inaccuracy; and abstains from disallowing it without attempting to ascertain its meaning, only because undue delay of justice, with its consequent evils, would probably result from such a course.

4. *Acts and declarations of partner; how far binding on co-partner.* When the business of a partnership is carried on in the name of one partner individually, the acts, declarations, and representations of the silent partner, in transactions relating to the business of the partnership, are binding on the active partner, in all civil aspects, just as if he had been present and authorized them.

5. *Estoppel by representations.*—If a mortgagee for advances to make a crop, on selling and transferring the instrument to another person, represents that he has no other claim on the mortgaged property than that shown by the written instrument, and the transferree buys it on the faith of such representations, the mortgagee is estopped from setting up against his transferree any claim for rent, or other superior claim, then held and owned by him; but not an outstanding superior claim for rent afterwards acquired by him.

6. *Removal or sale of mortgaged property.*—A mortgagee of personal property, having sold and transferred the mortgage to another person, may be prosecuted for a subsequent sale or removal of the property (Code, § 3835), and the intent to defraud the transferree may be in-

[Foster v. The State.]

ferred by the jury from his knowledge of the lien; but, if the transfer of the mortgage was made by his partner, it must be shown that he had knowledge of it, though it may be binding on him civilly without knowledge.

7. *Same.*—If the defendant's partner, on transferring the mortgage, made representations which would estop the defendant, or the partnership, civilly, from setting up against the transferree any other claim then held by them against the mortgaged property, and the defendant afterwards sold the property under another claim; he is not responsible criminally, unless it is shown that he had knowledge of those representations, and that he or the partnership then owned the claim under which he afterwards sold the property.

8. *Secondary evidence; notice to produce papers; proof of loss.*—When a written document becomes material evidence in a cause, civil or criminal, the original must be produced, or its absence satisfactorily accounted for, before secondary evidence of its contents can be received; if traced to the possession of the opposite party, notice to produce it must be given; if in the custody of a stranger, who is within the jurisdiction of the court, a subpoena *duces tecum* is necessary; but the manner of proving its loss varies with the facts of each particular case.

FROM the Circuit Court of Conecuh.

Tried before the Hon. JOHN P. HUBBARD.

The indictment in this case charged that W. C. Foster and James M. Windham, "with the purpose to hinder, delay or defraud Bryant Johnson, who had a valid and lawful claim thereto, under a written instrument, lien created by law for rent or advances, or other lawful and valid claim, verbal or written, did sell or remove personal property, consisting of one cow and calf and 900 pounds of seed-cotton, of the aggregate value of $27; they, the said J. M. Windham and W. C. Foster, having at the time a knowledge of the existence of such claim." The indictment was found in October, 1884. On the first trial, Windham was acquitted, and the jury returned a verdict against Foster, finding him "guilty of removing 500 pounds of seed-cotton, valued at $12.50," and assessing a fine of $25 against him. This verdict was entered up in the judgment, as it is copied in the transcript, as a verdict of guilty against Foster, finding the value of the property to be $12.50, and assessing a fine of $25 against him, and he thereupon confessed judgment for the fine and costs, with sureties; but this judgment was set aside, at his instance, on a subsequent day of the term, and a new trial granted. On the second trial, as shown by the transcript, the defendant pleaded the former verdict and judgment as an acquittal (1) of the charge as to the cow and calf, and (2) of the entire charge except as to the 500 pounds of seed-cotton. To each of these pleas the State replied the judgment granting a new trial on the defendant's motion; to which replications he demurred, but the court overruled the

demurrers, and held that the former verdict and judgment constituted no bar to any part of the prosecution.

Issue was then joined on the plea of not guilty, but the transcript does not show what the verdict or judgment was. On the trial, as appears from the bill of exceptions, the State introduced secondary evidence of a mortgage for advances to make a crop during the year 1883, executed to the defendant by P. Lewis and Mrs. N. C. Reid; which seems to have been transferred by the defendant, "*per* Stallworth & Burnett, his attorneys," on the 1st November, 1883, to Geo. M. Leigh, and by said Leigh, November 6th, 1883, to Bryant Johnson; and adduced evidence showing that the defendant, after the transfer of this mortgage, had received and sold some of the property conveyed by it. The defense seems to have been, that the cotton sold by the defendant after the transfer of the mortgage, which was raised by said P. Lewis during the year 1883, was subject to a prior lien for rent, of which lien and claim he was the owner at the time he sold the cotton. Numerous exceptions were reserved by the defendant to the rulings of the court on the admissibility of evidence, and in the matter of charges given and refused; but the opinion of this court renders it unnecessary to state these rulings.

JOHN GAMBLE, and WATTS & SON, for appellant, cited the following cases, as to the effect of the former verdict and judgment: *Nancy v. State*, 6 Ala. 485; *Berry v. State*, 65 Ala. 120; *Bell v. State*, 48 Ala. 684; *Nabors v. State*, 6 Ala. 200; *Burns v. State*, 8 Ala. 313; *Martin v. State*, 28 Ala. 72; *Wittick v. Traun*, 25 Ala. 317.

WM. L. MARTIN, Attorney-General, for the State.

STONE, C. J.—When the case of the defendant was submitted to the jury on the first trial, he was placed, or put, in what the law calls jeopardy. The case, at that stage, could not be lawfully taken from the jury, except in one of three ways: *first*, by a verdict of guilty, or not guilty, rendered; *second*, by a failure of the jury to agree within the term allotted for the court, or some other legal ground supervening, which renders their discharge a necessity; or, *third*, where the jury having rendered no verdict, the case is taken from them by consent, and a mistrial had. In this case, the jury did render what they obviously intended as a verdict,

and the court received it, and discharged them.    Judgment was subsequently arrested, on the ground of an imperfection in the verdict.    Now, what the jury intended as a verdict, was either a verdict, or it was a nullity.    If a nullity, then the jury was discharged before they had rendered their verdict, without any lawful excuse therefor, and without the consent of the accused.    If we come to this conclusion, the prisoner having been once put in legal jeopardy, and the case taken from the jury without a verdict, and without authority of law, he could not again be put on trial for any offense charged in that indictment.—*State, ex rel. Battle,* 7 Ala. 259; 1 Brick. Dig. 455, § 110; *Powell v. State,* 19 Ala. 577; *Hodges v. State,* 8 Ala. 55; *Allen v. State,* 52 Ala. 391; *Crook v. State,* 60 Ala. 39.

We think, however, that the verdict was not a nullity, but was only incomplete, or irregular.—*Dover v. State,* 75 Ala. 40, and authorities cited.    *Allen v. State,* 52 Ala. 391, holds that, in such case, the defendant should be held for further trial.—*Gunter v. State,* 83 Ala. 96.    If the jury return a verdict of guilty as to a part of the offense, or items of the offense, charged in the indictment, and say nothing in reference to the residue, "as to all which is not found the conclusion must be, that the jury intended to acquit."—1 Brick. Dig. 518, § 986; *Berry v. State,* 65 Ala. 120.

The Circuit Court erred in overruling the demurrer to the State's replication, interposed to the defendant's plea of former acquittal, and in the charge given to the jury on that issue.    The verdict on the first trial acquitted the defendant of all criminality in removing the cow and calf, knowing them to be under a valid, subsisting lien.    On that feature of the indictment, the defendant can never again be put on trial.

In the transcript sent up in this case, there are many obvious errors, such as mistaking one word for another; and frequent blank spaces are left, to be supplied, we suppose, by words not understood by the copyist.    An air of general inaccuracy is observable throughout the transcript, which has suggested the inquiry if we should not disallow it, without attempting to ascertain what its true meaning is.    Undue delay of justice, with its consequent evils, would probably result from such a course, and we therefore abstain from it.    Transcripts for this court should be the work of skillful, if not experienced copyists.

We will not attempt to notice in detail the many exceptions reserved.    We could not, if we would; for many of them are

[Foster v. The State.]

so obscurely expressed, that we fear to hazard an interpretation of them. The obscurity, we suppose, is the result of bad copying. We trust so imperfect a record will not again come before us, for we should regret the necessity of making what might seem to be a harsh ruling.

Among the controlling inquiries in this case may be reckoned the transfer to Johnson, or to Leigh for Johnson, of the mortgage made by P. Lewis and Mrs. N. C. Reid to Foster, the defendant, bearing date February 26, 1883, and the effect of that transfer in making up the offense for which the defendant was indicted. There was no proof that W. C. Foster, the defendant, was present when that transfer was made; but there is testimony that R. Z. Foster was present, and sanctioned the sale and transfer of the mortgage to Leigh, for Johnson. The defendant testified, that R. Z. Foster was a silent partner in the business; and it follows that what he said, did, or sanctioned, binds the firm of W. C. Foster, in all the civil bearings of the question. Hence, if R. Z. Foster was present, and authorized or sanctioned the contract and settlement with Johnson, and the sale and surrender to him of the mortgage and the debt secured by it, this would bind W. C. Foster civilly, to the same extent as if he had been personally present, acting for himself. And if in that contract or settlement R. Z. Foster represented that the mortgage debt of $44 was the entire claim which the firm of W. C. Foster held against the property mortgaged, or if he knowingly permitted another to make such representation, and did not deny it; and if upon such representation Johnson was induced to purchase the mortgage claim, and, through Leigh, part with his money in paying the claim, this would amount to a civil estoppel against the firm of W. C. Foster, as to any other claim or lien it then held and could assert against the property embraced in the mortgage.—3 Brick. Dig. 448. And this rule of estoppel would apply even as to the claim against Lewis and Mrs. Reid for Lewis' rent, if that claim was then held or owned by the firm of W. C. Foster. We are speaking of the civil aspect of the question.

To constitute criminality, there must be both an act and an intent. Knowledge, however, sometimes renders an act criminal, which otherwise would be harmless. Buying stolen goods, and passing counterfeit money, are of this class. So, selling or removing property on which there is a valid lien, if less than larceny, can not become criminal, unless tainted

[Foster v. The State.]

with knowledge—actual knowledge—of the lien, and there is an intent to defraud the lienee. The intent, however, is an inferential fact to be drawn by the jury, and proof of the sale or removal, with knowledge of the lien, will authorize a jury to infer the intent, when there are no attendant circumstances to repel the inference.

To justify the defendant's conviction in this case, it is necessary that he should have known, or been notified, that the mortgage had been transferred for Johnson's benefit, upon a consideration paid by or for him, and that the alleged representations had been made. And if Foster was, at that time, the owner of the claim against Lewis for unpaid rent, then the question will arise, whether he acquired that claim before or after the trade with Johnson, and whether the rent was in fact unpaid. If so, rent due a landlord being the paramount lien on the crop, he should not be convicted for removing the cotton, if he acquired the claim after the transfer to Johnson. If, however, Foster owned the rent claim on Lewis before the transfer to Johnson, the rent being unpaid, then the question of his guilt would depend on the inquiry, whether in trading with Johnson representations were made which, as we have said above, would estop Foster from asserting any other lien he then held on the property, and whether Foster had been notified that such representations had been made. These concurring facts could alone give Johnson a prior lien on the crop over the claim for rent, and knowledge or notice of them was an indispensable condition of finding Foster guilty of the intent to defraud Johnson.

When documents become material evidence in a cause, civil or criminal, the rules of law require that the original shall be produced, or its absence accounted for. If the document be shown to have been destroyed, or if it be shown in a satisfactory manner that it is lost, then secondary evidence may be given of its contents. If traced to the opposite party, notice to produce must be given; and if disobeyed, the contents may be proved. If the custody is in a stranger, it is reached by a *subpœna duces tecum*, if the custodian is within the jurisdiction of the court. The manner of proving loss varies with the facts of each particular case. As a rule, careful search must be made where the document was last known to be, or where it would most likely be found. 1 Brick. Dig. 848, §§ 626, 632-4; 3 *Ib.* 440, §§ 507 *et seq.*

We will not comment on the particular rulings. What we have said will furnish a sufficient guide on another trial.

Reversed and remanded.