[East Tenn., Va. & Ga. Railway Co. v. Davis.]

# East Tenn., Va. & Ga. Railway Co. v. Davis.

## Statutory Action in nature of Ejectment.

1. *Statute of frauds; contract for sale of lands.*—Under the provisions of the statute of frauds (Code, § 1732, subd. 5), a verbal contract for the sale of land, or an interest therein, is not void, when the purchaser is put in possession, and pays the purchase-money, or a portion thereof; and the exception equally prevails when the agreed consideration is the erection of specified improvements, or the performance of other work and labor, instead of the payment of money.

2. *Adverse possession by purchaser, or under parol license.*—When a person enters into the possession of land under a parol license, or by permission of the owner, he does not acquire a title by continued possession for ten years; but, if he enters as purchaser under a verbal contract, his possession becomes adverse from the day on which the purchase-money is paid, and, if continued for ten years, ripens into a perfect title, on which he may successfully maintain or defeat an ejectment.

3. *Proof of railroad officers.*—A witness may testify as to who are or were officers of a railroad, without producing evidence of their appointment. The functions of such officials being somewhat akin to those of public officers, knowledge of the fact that they acted in certain capacities, without question or interference, making a *prima facie* case of right, a witness may testify as facts that they are the officers they assume to be.

4. *Proof of intention, or motive.*—A witness, or party testifying as a witness, can not state the reason, motive, or intention, if uncommunicated at the time, with which an act was done or omitted.

5. *Proof of ownership, possession, claim, etc.*—A witness may testify to ownership, possession, permission, &c., as facts, and may state facts showing the nature, character, and duration of the possession; but not claim of ownership, unless communicated.

6. *Admissions of agent, as evidence against principal.*—Letters or other documents signed by officers of the defendant railroad company pending a proposed compromise or settlement of the matters in dispute with plaintiff, which was never consummated, containing admissions in his favor, in reference to past transactions, are not admissible as evidence against the railroad company, unless it is shown that said officers or agents had authority to make them.

7. *Acknowledgment of deed.*—The statutory form of certificate for the acknowledgment of a deed is required to state that the grantor, "whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date" (Code, § 1802); and a certificate which states that the grantors, being personally known, appeared, "and, being informed of the contents of the conveyance, acknowledged that they signed the same," &c., does not show a substantial compliance with this statutory form.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. JOHN B. TALLY.

This action was brought by E. R· Davis, against the appellant railroad company, to recover the possession of a small strip of land, containing about three acres; and was commenced on the 29th September, 1887. The land was part of a quartion-section which the plaintiff claimed under a conveyance from John T. Stocks, dated January 3d, 1887; and his evidence showed that Stocks held under a conveyance from H. A. Smith, dated February 21st, 1887, and also under a purchase in 1872, or 1873, at a sale made by Ira Webb, as the administrator of one Alexander, who died in June, or July, 1869. The defendant pleaded not guilty, and made a statutory suggestion of adverse possession for three years and the erection of valuable improvements; but the defendant's evidence showed that it claimed the land under a parol contract of purchase from said Alexander in 1868–9, which was thus stated by one Hanks, a witness for defendant: "Alexander and Kline, a railroad man, were standing at the crossing of the railroad and the dirt road. Alexander called me, and said he was letting the railroad have some land for section-houses, for which they were to put in a spur-track; and he wanted me to witness the contract. The railroad was to have three acres, the line to start at the crossing where we were standing, and to be one acre wide, and run three acres in length with the railroad's right of way. This conversation occurred within fifty or sixty yards of where the section-houses are." The defendant's evidence tended to show that the section-houses were built by the railroad company, under this contract, and the spur track was also built as stipulated; but there was conflicting evidence as to these facts, and the time is not definitely stated. Stocks, whose deposition was taken by the plaintiff, testified that he built one or more of the houses, while he was in possession under his purchase from Alexander, and that the possession of the railroad was permissive only.

The deed from Alexander's administrator to Stocks was not produced, but the deed from Smith to Stocks, and also the deed from Stocks to plaintiff, were produced, and admitted in evidence. The deed last named was filed for record on the 14th January, 1887, and was admitted to record on a certificate of acknowledgment made by a commissioner of deeds in Georgia, in these words: "I, Harry Krouse, commissioner," &c., "hereby certify that John T. Stocks and Annie E. Stocks, who are known to me, and whose names are signed to the foregoing conveyance, appeared before me on this day, and, being informed of the contents of the conveyance, acknowl-

[East Tenn., Va. & Ga. Railway Co. v. Davis.]

edged that they signed the same, freely and voluntarily, on the day the same bears date." The court admitted this deed in evidence, against the objections and exception of defendant.

The deposition of Stocks was taken by plaintiff, and cross-interrogatories were filed by defendant; numerous objections being interposed to different questions and answers, and several grounds of objection being specified in each instance. The points decided by this court do not require a statement in detail of these numerous objections and exceptions, even if it were practicable within the limits of this report. The deposition of Stocks showed that, some time before his sale and conveyance of the quarter-section to plaintiff, a controversy had arisen between him and the railroad company, as to the latter's right to remove the section-houses, or his right to demand compensation for them; and several letters and documents passed between the parties in reference to this matter, with a view to a settlement or compromise of their conflicting claims. This correspondence was conducted, on the part of the defendant, by Ro. Lapsley, as attorney, J. M. Bridges, division superintendent, and Jno. F. O'Brien, general superintendent; and Stocks testified, against the objections and exceptions of the defendant, that Bridges and O'Brien held those positions respectively at that time. Exhibit B to the deposition of Stocks, mentioned in the opinion, is a written agreement for the compromise and settlement of the controversy, which was prepared for the signatures of the parties, but was never signed by either; and "Exhibit A," also referred to in the opinion, is an indorsement or memorandum written by Bridges, referring the matter to O'Brien, and using these words: "Mr. Lapsley referred this matter to Gen. Pettus, and as we have no deeds to the property, they recommend that we have the agreement entered into."

The defendant requested numerous charges in writing, and duly excepted to the refusal of the following:

(7.) "The letters from Lapsley to Stocks are no admissions of title, or of the character of defendant's possession, which could in any way bind the defendant." (11.) "No mere admission or declaration of any agent or employè of the railroad would bind defendant, unless such admission or declaration was authorized by a vote of the board of directors, or other authority authorizing such admission or declaration." (12.) "If the jury believe from the evidence that the defendant, or those under whom the defendant claims, went into possession of the three acres on which the section-houses were located, under a contract with Alexander, by which said railroad company was to have said three acres if they would build a spur-track; and

that the railroad company went into possession of said three acres soon afterwards, and built the section-houses, and also built the spur-track; then defendant's possession was adverse, and the burden of showing that it was not is on plaintiff." (14.) "If the jury believe from the evidence that the defendant went into possession under Alexander, under a claim of right, then the statute of limitations began to run in favor of the defendant from that time, and the mere fact that Stocks occasionally had hands in the houses, or that hands who had gone in under the railroad worked for him, does not disturb the running of the statute." (27.) "If the defendant was in actual occupancy of the three acres and section-houses at the time plaintiff purchased, he was bound to make inquiry of the railroad company as to the character of their possession."

The refusal of each of these charges, and the several rulings on evidence to which exceptions were reserved, are now assigned as error, making 43 assignments in all.

J. L. BURNETT, for appellant.

J. A. WALDEN, *contra.*

STONE, C. J.—The testimony in the present record convinces us that the railroad company's section-houses were first placed on the three acres of land in controversy about the year 1869,—some eighteen years before this suit was brought. At that time Alexander owned the land. There is no attempt to prove that any written agreement was entered into between Alexander and the railroad company, and we infer, and must presume, that none was entered into. There is some proof tending to show that there was a verbal agreement, or understanding, under which Alexander surrendered the land, or its use, to the railroad company, for the purpose to which the railroad applied it, in consideration that the latter would construct a side or spur-track on the former's land, and that the railroad company did construct such side or spur-track. On the other hand, it is contended that the railroad company did not hold the possession under claim or right, but under a parol license, and permissively, not asserting any right to the possession. It is not shown at what time the side or spur-track was constructed. The exact agreement or understanding, if any was made, under which the railroad company took possession, and constructed its section-houses, was, perhaps, the most important inquiry presented for the jury's decision.

Our statute—Code of 1886, § 1732—makes void all contracts for the sale of land, or any greater interest therein than a

lease for a term not exceeding one year, unless the contract is in writing, subscribed by the party to be charged, or by some other person by him thereunto lawfully authorized in writing. But the statute has an exception. It does not apply, when the purchase-money, or a portion thereof, is paid, and the purchaser is put in possession by the seller. Hence, in this case, if Alexander and the railroad company made an agreement, by which the latter was to have the three acres of land, or its use, and in consideration thereof was to construct, and did construct the side or spur-track, this took the contract without the influence of the statute of frauds, and constituted it a valid contract of bargain and sale.—*Shakespeare v. Alba*, 76 Ala. 35; *Martin v. Blanchett*, 77 Ala. 288; 8 Amer. & Eng. Encyc. of Law, 738 *et seq*. And if the railroad company was in possession at the time Stocks made his purchase, this was sufficient notice to put him on inquiry as to the nature of the railroad's claim.—3 Brick. Dig. 811, § § 136 *et seq*.

The claim of the railroad company, however, if made to appear as we have hypothesized, is not, *per se*, a legal title. It is only an equity, and is no defense to the action of ejectment. We have stated it, however, because it is introductory to another principle—the statute of limitations of ten years—which is one of the defenses relied on in this case. That defense is raised by the plea of not guilty.—3 Brick. Dig. 621, § 63.

If the railroad company took possession permissively, under a parol license, then no length of time could perfect a title in it, unless the nature of its holding had been subsequently converted into an adverse possession, of which there is no evidence in this record.—1 Amer. & Eng. Encyc. of Law, 251; *Houston v. Fariss*, 71 Ala. 570; s. c., 74 *Ib*. 162. On the other hand, if the possession was taken under purchase, as hypothesized above, then it becomes material to inquire whether the side or spur-track was constructed, and when constructed. When a purchaser of land, or of an interest therein, takes possession under his purchase, his possession does not become adverse until he pays the purchase-money. If the agreement was that the railroad company agreed to construct a side or spur-track, as the consideration for the land, or its use, and if it constructed such side or spur-track, then it complied with its part of the executory agreement, and paid the agreed price. From the date of such payment—the completion of the side or spur-track—nothing else interfering, the railroad's possession became adverse; and if continued for ten years before this suit was brought, it would mature into a title, and would be a complete defense to this action.—3 Brick. Dig. 622, §§ 71-2.

There is, also, some testimony tending to show that, while

Stocks was the owner of the forty acres of land, he himself, through his employès, had possession of one or more of the section-houses, and that when new houses were proposed to be erected, he was inquired of in relation thereto. And there is also testimony tending to show that, at some time, Stocks was agent of the railroad company, at a station near by. This testimony was important only to the extent it tended to show the nature of the right under which the railroad company held possession, and in what right Stocks' employès sometimes occupied one or more of the houses. If Stocks, as owner of the land, asserted the right, and took possession in virtue of his title, and this was brought home to the knowledge of the officials of the railroad, then it becomes a circumstance tending to show that the possession of the railroad company was only permissive, and not in independent right. If, on the other hand, such possession of the section-houses by Stocks' employès was during the time he was agent, or was merely temporary, finding the houses vacant, or if done under circumstances not indicating asserted ownership, then such possession does not tend to establish plaintiff's right to recover.

In stating the foregoing rules, we have been influenced by the conviction, that the questions therein are the most important which this record presents, and by a desire to present the questions properly before the jury. We must not be understood as imtimating how these questions of fact should be solved. These are questions for the jury, under proper instructions from the court.

There was testimony tending to show that, after the side or spur-track was constructed, the mill on the adjacent lands was discontinued, and that subsequently the spur-track was discontinued also. The record is not full enough to inform us what effect, if any, the removal can exert on this case. It would depend on the nature of the original agreement, if one was made.

A very great number of exceptions were reserved to the rulings of the trial court on the introduction of testimony; particularly in reference to the testimony of the witness Stocks. It is not our intention to notice all these exceptions in detail. Certain general rules apply to most of them. We hold, then—*First*, that witnesses may testify as to who are or were officers of a railroad, without producing evidence of their appointment. Their functions are somewhat akin to those of public officers, and knowledge that they acted in certain capacities, and were not interfered with, or questioned as to their right to so act, makes such a *prima facie* case of right, as that the public is authorized to deal with them as such, and wit-

nesses may testify as facts that they are the officers they assume to be.—*Martin v. State*, 89 Ala. 115. If this were not so, how could it be shown that A was ticket-agent, B baggage-master, C conductor, D engineer, or E brakeman? The rule is different, and rests on a different principle, from that which obtains in private transactions, when proof is offered to show that one person is agent of another. *Second*, witnesses may testify to material facts, either single or collective, but can not testify to the uncommunicated motives or intentions with which an act is done, or omitted to be done.—3 Brick. Dig. 437–8; *Ball v. Farley*, 81 Ala. 288; *Burks v. Bragg*, 89 Ala. 204. *Third*, witnesses were properly allowed to testify to ownership, to possession, and to permission given. Claim of ownership, unless communicated, was improper. Nature, duration and character of possession, or, rather, the facts show ing them, were competent evidence. All beyond this, unless communicated to the railroad officials in control, was not a fact to which witnesses could testify, but was matter for the jury.

Exhibits A and B to the deposition of Stocks were improperly admitted in evidence. The attempted settlement shown by those papers was not consummated; and hence the only effect which could be claimed for them was, that they were, to some extent, an admission of right and title in Stocks. Such admissions, the officers of the railroad, being merely agents, are not shown to have had any authority to make. Their official position did not, *per se*, authorize them to make admissions of past transactions, and thus bind the railroad company.—*M. & G. R. R. Co. v. Cogsbill*, 85 Ala. 456. The same rule applies to all other letters and documents written or made by officers or agents of the railroad company.

It was not competent to prove that Webb told the witness Hanks "that he sold all to Stocks." This was hearsay.

The ruling of the court, by which Lapsley, the witness, was required to surrender certain papers to plaintiff's counsel for inspection, scarcely falls within any rule for the production of papers, which are not files of the court. Yet, this question can not, in the nature of things, come again before the trial court for decision. We need not decide it.—*Foster v. State*, 88 Ala. 182, 187.

The first step required of plaintiff, Davis, to make out his case, was to show title in himself. He claimed to have derived his title from Stocks. He offered no witness to prove the execution of the deed, but relied on the certificate of acknowledgment, made and attached to the deed by one of the officers our statute authorizes to take and certify such acknowledg-

ment.—Code of 1886, §§ 1798, 1800. Deeds, "acknowledged or proved according to law, . . . may be received in evidence in any court without further proof."—§ 1798. The statute, § 1802, furnishes the form of the certificate of acknowledgment. That form is as follows: "I, ——, hereby certify that ——, whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day, that being informed of the contents of the conveyance, he executed the same voluntarily on the day the same bears date."

It will be observed that, in this certificate, the officer certifies certain things as facts within his knowledge. Thus, he certifies as facts that he knows the person whose name is signed to the conveyance, and that that person was before him on the day mentioned in the certificate. The other essentials of the certificate he does not certify as facts. He certifies that the grantor acknowledged them to be facts. The two propositions he is required to certify, not as facts, but as acknowledgment of fact, are, first, that the grantor was informed of the contents of the conveyance, and, second, that he executed it voluntarily on the day the same bears date. The legislature had the clear power to prescribe conditions to the admissibility of deeds in evidence, wthout proof of their execution by witnesses, and they exercised that power by prescribing the form of the certificate which will dispense with such proof. Manifestly, the certificate, to be sufficient, must contain all that is of substance in the form given.—3 Brick. Digest, 300, §§ 133 to 138, inclusive; *Roney v. Moss*, 76 Ala. 491.

In the deed before us, the certificate affirms as fact, not as acknowledgment, that the grantor, "being informed of the contents of the conveyance, acknowledged," &c. This is a departure from the statutory form, and certainly does not mean the same thing. We fear to sanction such departure from what the legislature has prescribed, for we can not foresee to what lengths it might carry us.—*Kellar v. Moore*, 51 Ala. 340. The Circuit Court erred in receiving Stocks' deed in evidence, without proof of its execution.

Applying the principles declared above, we hold that the Circuit Court erred in refusing to give, at defendant's request, each of the charges numbered 7, 11, 12, 14 and 27.

Reversed and remanded.