Henry Ardis was charged with and convicted of the willful refusal to support his minor child and sentenced to twelve months hard labor in the Houston County Jail. From that conviction he now prosecutes this appeal.
The dispositive issue on this appeal is whether or not a prima facie case was proven by the State when tested by a timely motion to exclude.
We hold that insufficient evidence was presented to show that appellant had a duty to support the child named in the warrant of nonsupport and, therefore, reverse and render this case.
The case was heard by the court without a jury. The first witness for the State was the prosecutrix, Cinnetta Marsh. She testified that she is the mother of three children, ages five years, two years, and six months (R.p. 4, 11). She stated that beginning in May, 1977, she and appellant lived together for a period of some four months. In October, 1977, she discovered that she was pregnant (R.p. 5), and a child was born in June, 1978. Although she admitted that appellant never acknowledged paternity (R.p. 24), she nevertheless testified that he fathered the youngest child (R.p. 4, 15). Furthermore, she stated that while appellant had never supported the child (R.p. 4, 5, 24) he had bought some milk for the infant "a couple of times" (R.p. 6, 24).
Ms. Marsh testified that she had been unemployed since September, 1977, and that her only source of income was $148.00 she received each month from the Department of Pensions and Securities (R.p. 7). From that $148.00, she bought food stamps for herself and her children, paid her rent and utilities, and bought clothes for the child (R.p. 7-9).
Ms. Marsh further testified that during the four months' cohabitation with appellant she never had sex with the father of her other two children although she saw him on several occasions (R.pp. 12, 16, 22), and she indicated that she never obtained a warrant for nonsupport against the father of her other two children even though he had never paid support (R.p. 12). During the period that Ms. Marsh and appellant were living together, they took a premarital blood test (R.p. 23), though they never subsequently married.
After Ms. Marsh concluded her testimony, the State rested and appellant thereafter made a motion to exclude for failure to establish a prima facie case (R.p. 25). The court indicated that the State had not shown that appellant had a duty to support the child (R.p. 26). Thereafter, the court, over objection, allowed the State to re-open its case (R.p. 28).
At this point there had been no judicial determination of paternity, nor did the evidence establish a voluntary assumption of parenthood by the appellant.
 I
The State then called Elaine Brown, a secretary and a notary public in the District Attorney's Office in Houston County (R.p. 29). She testified that she was present at the time appellant's signature was placed on the affidavit marked State's Exhibit One and that she notarized the affidavit (R.p. 29-30). Over objection of an improper predicate, the affidavit was admitted into evidence (R.p. 32). The affidavit, dated April 18, 1978, acknowledges paternity of the unborn child of Cinnetta Marsh and contains an agreement for payment of weekly child support (State's Exhibit One). *Page 303 
On cross-examination, the following occurred (R.pp. 32-33):
"BY MR. DOWLING:
 "Q. Mrs. Brown, have you ever seen before the signature of Henry Lee Ardis?
"A. No, I haven't.
"Q. Have you ever seen it since?
"A. I don't think so.
 "Q. But, you are saying this man (Indicating) signed it in your presence?
"A. Yes, he did.
"MR. DOWLING: No further questions.
. . . . .
"EXAMINATION BY THE COURT:
"Q. Do you know Henry Lee Ardis?
"A. No, sir.
"Q. You don't know him?
"A. No, sir.
"Q. Would you recognize him if you saw him again?
"A. Probably not.
"Q. Probably not?
"A. No.
 "Q. But, whoever signed this signed it in your presence?
"A. Yes, he did.
"Q. Whether it was Henry Lee Ardis or not?
"A. Yes.
"Q. But you don't know Henry Lee Ardis?
"A. No, sir.
 "Q. So, when Mr. Dowling pointed to that man as the one that did it, you said yes?
 "A. I can't swear to that — that that is Henry Lee Ardis."
Thereupon, the State again rested its case. The court placed in the record the fact that the notary had indicated someone other than the appellant as the person whose signature she had acknowledged on State's Exhibit One (R.p. 34).
Appellant again insisted that the State had failed to establish a prima facie case, which contention the court denied (R.p. 34-35).
Thereafter, the defense presented no evidence and rested. Appellant was then convicted and sentenced.
 II
It is settled law in Alabama that the denial of a timely motion to exclude the State's evidence presents the question of the sufficiency of that evidence before this court. See Kontosv. State, Ala.Cr.App., 363 So.2d 1025 (1978), and authorities cited. If the evidence presented at trial by the State was insufficient as a matter of law to establish a necessary element in the State's case against appellant for nonsupport, it is the duty of this court to reverse the denial of a timely motion to exclude. Ford v. State, Ala.Cr.App., 370 So.2d 352
(1979); Gamble, McElroy's Alabama Evidence (3d Ed. 1977), § 449.05.
In order to support a conviction for criminal nonsupport against the putative father of an illegitimate child, the State must prove a legal duty to support the child by showing that there has been either a judicial determination of paternity or a public acknowledgment of paternity sufficient to show a voluntary assumption of parenthood. King v. Smith,392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Law v. State,238 Ala. 428, 191 So. 803 (1939). The State must also prove that the father deserted, or willfully neglected, or failed to support the child and that the child is in destitute or necessitous circumstances. § 30-4-51, Code of Alabama 1975;Rouse v. State, 43 Ala. App. 171, 184 So.2d 839 (1966); Turnerv. State, Ala., 343 So.2d 591 (1977).
There was no evidence of a judicial determination of paternity presented at trial. The only evidence presented by the State to prove its case was the testimony of the prosecutrix and the notarized affidavit allegedly signed by appellant.
At the close of the testimony of the prosecutrix, the trial judge declared that the State had failed to show that appellant had a duty to support the child named in the warrant. Only after the State had reopened its case and introduced the affidavit did the trial judge find the appellant guilty of nonsupport. Thus, it appears from the *Page 304 
record that this essential element of the State's case, i.e., the duty of support, was proven to the satisfaction of the trial judge only by means of the affidavit.
Therefore, the dispositive issue on this appeal is whether the affidavit was sufficient as a matter of law to show that duty of support.
The statutes establishing the offices of notaries public in Alabama do not contain specific procedures for the notary to follow in attesting signatures. §§ 36-20-1 through 32, Code of Alabama 1975, as amended. Section 36-20-5, supra, empowers the notary to "administer oaths in all matters incident to the exercise of their office . . .; take the acknowledgment or proof of instruments of writing relating to commerce . . .; [and] exercise such other powers as, according to commercial usage or the laws of this state, may belong to notaries public."
We find no Alabama cases that deal with the situation where a notary did not know the identity of the person whose signature he or she was attesting. A number of cases concerning mortgages, or other conveyances of realty, have ruled that a certificate of a notary in a document of conveyance is prima facie conclusive of the facts therein stated. The burden of impeaching the acknowledgment rests on the party attacking its validity and evidence of impeachment should be clear and convincing. See Colburn v. Mid-State Homes, Inc., 289 Ala. 255,266 So.2d 865 (1972), and cases cited therein; Jordan v.Conservation and Land Co., 273 Ala. 99, 134 So.2d 777 (1961), and cases cited therein.
Only in Jordan supra, was the knowledge of the notary even somewhat at issue. In Jordan, the complainant claimed that he had not signed the instrument of conveyance. The notary who acknowledged the instrument testified that she did not remember the particular circumstances when she signed the acknowledgment. The court indicated in dictum that testimony of a notary that the acknowledgment of an instrument is in his handwriting is sufficient evidence of its execution even though he does not remember the particular transaction or circumstances. The court, in Jordan, however, never truly addressed this issue since there was no allegation in the bill of complaint impeaching the notary's acknowledgment.
The forms by which "conveyances and instruments of every description admitted to record" are to be acknowledged are found in § 35-4-29, Code of Alabama 1975. The statute clearly requires the notary to certify that the person seeking the acknowledgment "is known to me." (Emphasis supplied) Moreover, Alabama cases have held that, where the form of an acknowledgment did not state that the person who executed the conveyance was personally known or identified to the officer taking the acknowledgment, the conveyance was invalid as evidence. Thomas v. Davis, 241 Ala. 271, 2 So.2d 616 (1941);Davidson v. Alabama Iron Steel Co., 109 Ala. 383, 19 So. 390
(1896); East Tennessee V. G. Ry. Co. v. Davis, 91 Ala. 615,8 So. 349 (1890). Cf. Butler v. Olshan, 280 Ala. 181, 191 So.2d 7
(1966) (Notary has duty not to negligently acknowledge).
It is obvious from the statute and cases discussed above that a duty is imposed upon notaries public to ascertain the identity of the person whose signature they attest.
Dean Wigmore, in his Treatise on Evidence, phrases the problem as follows:
 "Certain kinds of official statements are clearly intended by the law to be based upon actual personal observation. The transaction which the officer is authorized to record or certify is, in its nature, a transaction done by him or done before him by another person. He cannot fulfill his duty to do or supervise the transaction except so far as it is done by or before him . . .
. . . . .
 "That the notary . . . is one of those officers who are required to certify on nothing less than personal knowledge seems clear . . . He certifies under his oath of office that A.B., known to *Page 305 
him to be the person therein mentioned, personally appeared before him and executed the writing. If this was not so, then he is neither a good witness nor an honest officer. Yet in professional practice in some of our communities, it is not uncommon for a notary to give the certificate without such knowledge or in the absence of the person. Such practices tend to destroy the credit which the law gives to the certificates and to overturn the whole basis of security for the recordation system. A specific penalty should be enforced for such violations of the oath of office. Courts should do what they can to insist on that faithful performance of official duty which alone is the justification for this branch of the Hearsay exception." (Emphasis on original) 5 Wigmore, Evidence, § 1635 (Chadbourn rev. 1974).
It clearly appears from the record in the present case that the notary public whose testimony is relied upon did not have personal knowledge of the identity of the person who signed the affidavit at the time the signature was notarized (R.pp. 32-33). Moreover, there was no evidence presented regarding the notary's usual practice of identifying those whose signatures she did attest. See Williams v. Riddlesperger, 227 Ala. 113,148 So. 803 (1933); Meyers v. Meyers, 81 Wn.2d 533,503 P.2d 59 (1972).
From the facts thus shown in this record, we cannot in good conscience conclude that the State met its strict burden of proof in this cause. Since the affidavit in this case was insufficient as a matter of law to prove this vital and essential element of the State's case, it was error for the trial court to have denied appellant's timely motion to exclude. Arnold v. State, 30 Ala. App. 115, 2 So.2d 316 (1941).
For the reasons shown, this case is reversed and rendered under Ford v. State, Ala.Cr.App., 370 So.2d 352 (1979); andBurks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1
(1978).
REVERSED AND RENDERED.
All the Judges concur.