[Bullock v. Knox.]

# Bullock *v.* Knox.

*Bill in Equity for Partition of Land, and for Relief against Trespasser.*

1. *Evidence to rebut presumption of legitimacy from birth during marriage.*—The presumption of legitimacy from the birth of a child during marriage may be rebutted by evidence which shows that the husband could not be the father of the child; and where a mulatto child is born of a white woman whose husband is a white man, it is competent to show that it is contrary to the laws of nature for both the parents of a mulatto to be persons of the white race, and it is not improper to receive the testimony of scientific experts upon the inquiry.

2. *Equity pleading; multifariousness.*—A bill in equity is multifarious which seeks a partition among the true owners of land, and also a settlement of their legal claim against one who, the bill alleges, has no interest in the property, but who, without right, has been in possession, in common with the true owners, receiving rents and profits.

3. *Partition of land; issue out of chancery as to defendant's title.*—The statute (Code, § 3588), providing that in suits for the partition of lands, if the defendant denies the title of the complainant, the bill need not be dismissed or delayed until a trial can be had at law, but that the issue as to the title of the complainant may be directed to be tried as other issues out of chancery are triable under the statute, does not cover the case of a contest as to the title between a complainant claiming to be one of the real owners of the property and a defendant who, as the bill alleges, has no interest in it.

APPEAL from the Chancery Court of Lowndes.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed June 19, 1891, by William W. Knox, against Fanny Allums, J. E. Holmes, Ben Knox, a minor over the age of fourteen years, and W. P. Bullock, the guardian of said Ben Knox; and prayed (1) that a decree be made declaring that said Ben Knox has no right, title, claim or interest in the lands described in the bill; (2) that said Bullock, as the guardian of Ben Knox, be required to account for the amounts of rents from said land, received by him for his ward, Ben Knox, and that a decree be rendered against him for such amount, in favor of the complainant and the defendant Fanny Allums; and (3) that the land and the money received by Bullock as rent, be partitioned and divided between the complainant and said Fanny Allums, in equal shares. The bill alleged that the defendant Holmes

claimed an interest in the land described, under a conveyance from the complainant.

The defendant Bullock demurred to the bill, assigning the following, among other grounds: (1.) "That it appears by the said bill that the same is exhibited against this respondent and J. E. Holmes, Ben Knox and Fanny Allums, for distinct matters and causes, in several whereof, as it appears by said bill, this respondent is not in any manner interested or concerned, and that said bill of complaint is altogether multifarious." (2.) "That it appears by said bill that the complainant and this respondent do not jointly or in common hold undivided interests in said land." (3.) "That it appears by said bill that this respondent has no such interest in said lands as that he can be made a party defendant to said bill of complaint."

Ben Knox, by his guardian, demurred to the bill, assigning the above stated grounds, and also the following among others: (1.) "That it appears by said bill that the complainant has a clear, adequate and complete remedy at law for all rights which he seeks to enforce against this respondent in and by said bill of complaint." (2.) "That the complainant has no right to repudiate, or disavow, or call in question the filiation of this respondent." (3.) "That it appears in and by said bill that more than ten years have elapsed since the death of Wilson Knox, and the final settlement of his estate, and that the complainant can not now disturb or question the filiation of this respondent to Wilson Knox." (4.) "That this court is without the power to inquire into the filiation of this respondent to Wilson Knox, on the facts stated and contained in said bill of complaint."

The appeal is from the decree of the Chancery Court overruling each of these demurrers.

J. C. RICHARDSON, for appellant, cited *Eloi v. Mader*, 33 Amer. Dec.; *Hemmenway v. Towner*, 1 Allen, 209; *Egbert v. Greenwall*, 38 Am. Rep. 260; *Weatherford v. Weatherford*, 56 Am. Dec. 206.

CLEMENTS & BREWER, contra, cited *Watkins v. Carlton*, 10 Leigh (Va.), 560; 2 Kent's Com. 211; *Tindal v. Drake*, 51 Ala. 574.

WALKER, J.—The bill in this case prays for a partition among the heirs of Wilson Knox, deceased, of certain land owned by him at the time of his death. It is alleged that the complainant is a son, and that the defendant Fanny

[Bullock v. Knox.]

Allums, who is the wife of J. B. Allums, is a daughter of Wilson Knox and his wife Amanda, who afterwards married one Stewart. The complainant claims that no other person is entitled to an interest in the land as an heir of Wilson Knox. The bill shows, however, that a one-third interest in the land is claimed for one Ben Knox, a minor, on the supposition that he also is a son of the decedent, and that the guardian of Ben Knox has been in possession of the land in common with the real heirs and has been receiving one-third of the rents. In reference to this claim in behalf of Ben Knox, the bill charges, "that said Ben Knox is a son of said Amanda Knox, *alias* Stewart, by an adulterous intimacy with a mulatto negro named Martin Knox, or some other mulatto negro, and orator denies that said Ben Knox is the son of said Wilson, and denies that said Ben is entitled to any share or portion or interest in said lands in any manner whatsoever, as orator further avers and charges that said Wilson and said Amanda were white people and of the white race, and said Ben Knox is a mulatto negro." It is plain that the claim of Ben Knox as an heir is assailed, not on the ground that he was not born in lawful wedlock, but on the ground that he was not in fact, and could not have been, the son of Wilson Knox, his mother's lawful husband. Ben Knox and his guardian are made parties defendant. The bill prays that the guardian be required to account to the complainant and Mrs. Allums · for the amount of the rents of the land in question received by him for his ward; and that a decree be made that said Ben Knox has no right, title, claim or interest in said described lands, and is not entitled to any portion or share in . the same. The appeal is from the decree overruling the demurrers of Ben Knox and of his guardian, Bullock, to the bill as amended.

It may be inferred from the averments of the bill, though it is not clearly shown, that Ben Knox was born while his mother and Wilson Knox were wife and husband, and that, therefore, the presumption is that he is the legitimate son of Wilson Knox. The questions to be considered are : On the averments of the bill as amended is Ben Knox to be treated as a son and heir of Wilson Knox, deceased? and, Do the existence of the claim in behalf of Ben Knox and the receipt of rents by his guardian render them proper parties to the bill for partition, for the purpose of decreeing that Ben Knox is not entitled to any interest in the land sought to be partitioned, and to require his guardian to account to the true heirs for the share of the rents received by him?

[Bullock v. Knox.]

The ancient common-law authorities declared the issue of every married woman to be legitimate, except in the two special cases of the impotency of the husband and his absence from the realm.   In the present case the complainant specifies the fact which is relied on to support the conclusion that Ben Knox is not the son of Wilson Knox, deceased.   That fact is that Ben Knox is a mulatto, while his mother was a white woman, and his mother's husband was a white man, and of the white race.   The inference is excluded that the charge of illegitimacy rests either upon the impotency of the husband or upon the impossibility of his access to the wife during the period when she became pregnant.   If the rule above stated prevails, the particular case alleged in the bill is not one in which the law permits the presumption of legitimacy to be disputed, and Ben Knox must be treated as the son of his mother's husband. But that rule has long since been exploded.   It operated in many cases to make a man in law the father of children who were obviously not his in fact.   The rule was first relaxed by permitting the conclusion of illegitimacy to be drawn in certain other special classes of cases in which legitimacy was impossible.   It was seen that there were other cases, not included in the common-law classification, in which it was impossible that the husband could be the father of a child born of his wife during their marriage.   Finally, the simple rule was recognized that a child is a bastard, though born, or begotten and born, during marriage, when it is impossible that its mother's husband could have been its father; and that every species of legal evidence tending to this conclusion is admissible on the trial of the issue as to its legitimacy.   The question of legitimacy is simply one of fact.   The modern authorities sustain the propositions, that the presumption of legitimacy from the birth of a child during marriage may be rebutted by evidence which clearly and conclusively shows that the procreation by the husband was impossible; and that it is competent to show that, according to the course of nature, the husband could not be the father of the child, as where a mulatto child is born of a woman of the white race whose husband is also of the white race.   That is the case here. We are satisfied that it is competent for the complainant to show by proof that it is contrary to the laws of nature for both the parents of a mulatto to be persons of the white race.   It may be that the court would be justified in recognizing such impossibility as a matter of common knowledge. No harm could be done, however, in receiving the testimony

[Bullock v. Knox.]

of scientific experts upon this inquiry.—*Watkins v. Carlton,*
10 Leigh (Va.), 560; *Cross v. Cross,* 3 Paige (Ch.), 139; 23
Amer. Dec. 775; *Head v. Head,* 1 Sim. & Stu. 150; 2 Kent's
Com. 211; Schouler's Domestic Relations (4th Ed.), p. 225;
2 Amer. & Eng. Encyc. of Law, 136–9; 13 *Ib.* 224–5. On
the averments of the bill, Ben Knox is to be treated as a
bastard, and not an heir of his mother's husband, Wilson
Knox, deceased.

It follows that Ben Knox has no interest in the partition
of the land in question. Partition is a matter between the
persons interested in the property to be partitioned. The
adverse claim of a stranger who in fact has no interest in the
property is a matter foreign to the partition of it among the
real owners. "In suits for the partition of lands, if the de-
fendant denies the title of the complainant, the chancellor
need not dismiss the bill or delay the suit until a trial can
be instituted and had at law, but may direct the issue as to
the title of the complainant to be tried as other issues of
fact are triable, according to the three sections next pro-
ceeding."—Code, § 3588. This statute provides for the trial
of an issue as to the complainant's title made by a defend-
ant who is conceded to be interested in the partition but
who denies the interest of the complainant. It is not in-
tended to cover the case of a contest between a complainant
who is one of the real owners of the property and a mere
stranger who has no interest in it. Such an adverse claim
by a stranger is simply an obstacle to the possession and
enjoyment of the property by the true owners. Their title
can be asserted and settled at law. Legal remedies are ad-
equate to protect their right of possession, and to compen-
sation for rents received by a mere intruder. The partition
between the true owners and a contest between them on the
one hand and a stranger on the other hand, who sets up an
unfounded claim to an interest in the property, are distinct
matters which have no connection with each other. In one
of them, the matter of partition between the true owners,
the adverse claimant has no interest. He can not be brought
into a controversy in which he is in no way concerned, merely
for the purpose of an adjudication that his claim is un-
founded. A bill is multifarious which seeks a partition
among the true owners of land, and also a settlement of
their legal claim against a mere intruder who, it is alleged,
has no interest in the property, but has been in possession
without right and in receipt of rents and profits. The de-
murrers on the ground of multifariousness would have been
sustained.—*West v. West,* 90 Ala. 458; *McEvoy v. Leonard,*

[Amer. Freehold Land Mort. Co. of London, Lim., v. McCall.]

89 Ala. 455; 3 Brick. Dig. 387–388. The case of *Tindal v. Drake*, 51 Ala. 574, is not an authority for making an adverse claimant a party defendant to a bill for partition, for the purpose of adjudicating his claim. It appeared in that case that the defendant who demurred had an interest in the partition, which was the main purpose of the suit.

If the bill shall be amended and it shall still appear that the true owners of the land are not in exclusive possession, but are disseized in part by a mere intruder, as such case is not covered by the provision of the statute in reference to the trial of the issue as to the title of the complainant when it is denied by a defendant who is properly a party to the suit for a partition, perhaps it is covered by the rule which prevailed before the enactment of the statute. The practice under that rule, in the case of an adverse holding, was to stay proceedings, until the questions of title and possession could be determined at law.—2 Brick. Dig. 294; Freeman on Cotenancy and Partition, § 447. This question, however, is not decided, as it is not presented on this appeal.

Reversed and remanded.

