(94 South. 243)

## H. H. DANIEL CO. v. BROWN.　(4 Div. 803.)

(Court of Appeals of Alabama.　Oct. 24, 1922.)

**1. Appeal and error ⊜⇒1012(1)—Finding on ore tenus evidence not disturbed unless contrary to the great weight of the evidence.**

Where the evidence was ore tenus, the Court of Appeals will not disturb the conclusion of the trial court unless contrary to the great weight of the evidence, but this rule does not apply where the evidence, save the testimony of the appellee, was all in writing.

**2. Brokers ⊜⇒86(1)—Evidence held to prove that plaintiff acted as defendant's broker and did not buy goods outright from defendant.**

In a broker's action to recover difference in amount advanced by it and the proceeds of the sale of a car of peas together with commissions and expenses, defended on the ground that defendant had sold the peas to the plaintiff, evidence *held* to prove that there was not a sale outright, and that the plaintiff acted merely as defendant's broker in handling the peas, and made an advance to defendant at his request.

Appeal from Circuit Court, Pike County; A. B. Foster, Judge.

Action on account by the H. H. Daniel Company against H. G. Brown. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

A. G. Seay, of Troy, for appellant.

Where the judgment is contrary to the law and evidence, or contrary to the preponder-

ance of the testimony, the appellate court will reverse and remand the cause, or render such judgment as the court below should have rendered. Acts 1915, p. 824; 196 Ala. 403, 72 South. 52; 17 Ala. App. 25, 81 South. 361; 17 Ala. App. 28, 81 South. 364; 89 South. 835.

W. L. & R. S. Parks, of Troy, for appellee.

Brief of counsel did not reach the Reporter.

MERRITT, J. The appellant brought a suit against the appellee to recover the difference in the amount advanced by it and the proceeds of the sale of a car of peas, together with commissions and some expense attached thereto, which car of peas the appellants claimed to be handling for the appellee as brokers.

The case was tried by the court without a jury, and the serious question involved is whether there was a sale outright to the appellant at a fixed minimum price per bushel, or whether the appellants merely advanced this minimum price, with the seller to gain by the profit over this price, if had, or to stand the loss if a less price was obtained.

[1] By a line of unbroken decisions the rule obtains that, where the evidence was ore tenus, or partly so, the trial court, seeing and hearing the witnesses, has an advantage over this court in considering and weighing the evidence, and this court will not disturb the conclusion of the trial court unless plainly contrary to the great weight of the evidence. Finney v. Studebaker Car, 196 Ala. 422, 72 South. 54; Thompson v. Collier, 170 Ala. 469, 54 South. 493; Gray v. Handy, 204 Ala. 559, 86 South. 548; Christie v. Durden, 205 Ala. 571, 88 South. 667; Ray v. Watkins, 203 Ala. 683, 85 South. 25; Hackett v. Cash, 196 Ala. 403, 72 South. 52; Clifford v. Montgomery, 202 Ala. 609, 81 South. 551; Jackson v. Hagin, 17 Ala. App. 216, 84 South. 547. In the case at bar, however, this rule can hardly prevail, as the testimony is all in writing, which is before this court just as it was before the trial court, save the testimony of the appellee.

[2] There are some facts and circumstances that stand out so patent and striking, as disclosed by the correspondence connected with this transaction, which to our minds, emphasizes and concludes the contention, that, no matter what the appellee says, he shipped these peas to the appellant, almost over its protest under a declining market, of which he was fully advised, and that they, as brokers, undertook and faithfully tried to handle this commodity without loss to the appellee, and that the amount paid or advanced on the peas was an advance under the belief and hope that this much could be realized out of the sale of the same, and in handling this produce appellant was doing this as the agent of the appellee, and that, an unquestioned loss having occurred, the market declining, the appellee should make good such loss and pay appellant its legitimate commission. To consider the matter first as disclosed by the documentary evidence: After some correspondence relative to handling the peas, prices, etc., and disclosing the dull condition of the market, the appellee by his letter of March 22, 1918, wrote the appellant that, as it appeared the market might be better in April, he be permitted to ship the peas, draw for $2.50 per bushel, and when sold send check for difference, deducting commissions. "In this way the peas will be ready for delivery when you get the order and there will be no delay." To this appellant replied by letter of March 27, 1918, that while no price was mentioned, if sample of peas was sent, they thought they could pay on basis of $2.50 per bushel less freight to New Orleans, adding:

"If we do this, of course it would be conditional on your fixing a price that would be satisfactory to yourself and acceptable to us. While we think the price will be higher when the demand sets in during April, we, of course, are not sure of this and would rather pursue a conservative course. Let us hear from you promptly and fully."

It appears that the peas were shipped without an answer from appellee to this letter as on March 30, appellee drew on appellant, which occasioned the letter of April 1st, wherein appellant in writing appellee calls attention to the fact that he had drawn for $2.50 per bushel without deducting the freight, whereupon appellee wrote appellant on April 4th to pay the freight and he would send his check, which was afterwards done by appellee paying $146 to appellant the amount of the same.

On May 10th appellee wrote appellant to advise him if car of peas had been sold and make report, appellant answering on May 13th, stating they had been unable to sell, noting the declining market, and calling for instructions as to what to do, appellee writing on the back of this letter and returning to appellant, as follows:

"As I have said several times, I am going to leave this entirely with you."

On June 1st appellants wrote of an offer of $2.25 for 300 bushels of the carload, and the sale of 200 bushels at $2.80, advising acceptance of offer, and asking for instructions.

On the back of this letter appellee's answer was written and returned to appellant as follows:

"You are on the ground and will have to handle the proposition at what you think best."

On June 30th appellant wrote that party had refused to stand by offer of $2.25; that 100 sacks more had been sold, and that it

was impossible to sell the balance, asking that 100 sacks be sent for resacking, and return shipment of same would be made, and they would make an effort to sell the remainder; that the weevils were bad and would likely eat the peas up.

On June 22, 1918, appellee, answering the above, said he did not want the peas shipped back to him, suggesting:

"The best thing I guess for you to do is to treat them there for weevils."

On June 27th appellants wrote that it was expensive and not advisable to treat for weevils, and they were selling off in small lots and would do the best they could to dispose of them.

On August 13th appellant rendered a statement to appellee, showing disposition of the peas, and asking for remittance to cover the amount, which is the foundation of the suit, to which letter the appellee never answered.

Harry Daniel, office man for the appellant at the time of these transactions, whose answers and interrogatories were offered in evidence, stated:

"We did not agree to buy this car of peas from the defendant. A full understanding of the agreement between us will be found in Mr. Brown's letter to us of March 22, 1918, and this was our entire understanding in the matter. Mr. Brown was to ship the peas to H. H. Daniel Company for $2.50 per bushel, less the freight, which was an advance to H. G. Brown on the car load of peas; if the peas sold for a larger sum. we were to forward the difference to Mr. Brown, less our commission."

The appellee, testifying in his own behalf, said that on the day of shipping the car of peas he called the appellant at New Orleans and some one answered the phone representing he was H. H. Daniel; that he did not know any member of the firm personally; that he sold the peas to them at $2.50 per bushel upon arrival at New Orleans, and when the peas were sold appellant was to pay the balance less their commissions; that they said it looked like peas would be a better price, but would guarantee a minimum price of $2.50 and would pay more if they could.

Notwithstanding the alleged conversation of the appellee with the appellant over the phone, the subsequent correspondence and transactions of the parties relative to the holding of these peas must convince one that the appellant's contention is correct. It may be asked, if the peas were sold outright to the appellant, why should the appellee be paying commissions? Why should the appellant advise with appellee before a sale or disposition was made for any part of the peas? Why should the appellee advise the

appellant that he was on the ground and to do the best he could? Why suggest that the peas be treated for weevils? And why should appellee have paid the freight without the semblance of a protest, if the sale was made over the phone, as he testified? To these and many other such pertinent questions arising out of the dealings between these parties relative to the transaction in question there can be, in our opinion, but one answer, and that is that the appellants were acting as agents or brokers for appellee in handling these peas; that the advance was made as per appellee's request; that the market gradually declined; that there was an unquestioned loss in the sale of the peas; and that appellant, having faithfully handled the transaction advising all the while with the appellee, should be reimbursed for such loss and its legitimate commissions. Judgment should have been rendered for the appellant, and for error in not so doing the judgment rendered for appellee is reversed, and the cause remanded.

Reversed and remanded.

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes