73 So.2d 556

## CARNEGIE v. CARNEGIE.

### 7 Div. 224.

Supreme Court of Alabama.

June 17, 1954.

Leonard Crawford, Fort Payne, for appellee.

SIMPSON, Justice.

Complainant, the husband, filed a bill for divorce on the ground of adultery, and the respondent answered by cross-bill denying the alleged act and asking for support for herself and baby (born in wedlock) and for a solicitor's fee. On evidence taken by depositions, a final decree was entered denying the divorce and solicitor's fee, but granting twenty-five ($25.00) dollars per month for support of the respondent and her child. The complainant appeals.

Since the evidence was not taken before the court, no presumption of correctness attends his findings of fact and we review the evidence as an original proposition. Armstrong v. Armstrong, 217 Ala. 581, 117 So. 195.

The trial court in the decree expressed the view that the case presented "a very unusual situation" and, in this phraseology we concur, and consider that no useful purpose

Scott, Dawson & Scott, Chas. J. Scott and Jas. A. Scott, Fort Payne, Joe M. Dawson, Scottsboro, for appellant.

would be served by setting out the evidence in detail. We shall limit discussion to a brief statement of some of the considerations which have led us to the result attained.

▇ With respect to the matter of right to a divorce, the question, of course, is has the complainant met his burden of proof. It is true that he at all times manifested considerable indifference toward his marital responsibilities, but both he and his wife had not reached the age of majority. And, as the trial court expressed it "the marriage was one of necessity" and the complainant was practically forced into it by his Mother. But this in no way detracts from the evidence bearing on the charge of adultery. Two persons testified that they were eye witnesses of the act. One was complainant's nineteen year old cousin, and the other his Uncle, a man of some maturity. When their relation to the complainant is considered, the first inclination might be that of disbelief, but a more careful consideration of the testimony along with the corroborating evidence impels the conclusion that their testimony should not be ignored. The corroborating evidence was the testimony of complainant's Mother (and there seems good reason to give it weight) and respondent's admission that on the night on which the alleged adultery took place she delayed her departure from the cafe, where numerous young people were present, and was accompanied home alone by the man with whom it was said she had committed the act. Finally, it is to be particularly noted, that the only countervailing evidence was that of the respondent herself, in denial, and that testimony is cast in considerable doubt since, in order to avert the charge of complainant that the child was not his own, she testified that certain premarital statements to friends claiming intercourse with another were falsifications. On a studious consideration of the whole evidence, we find ourselves in disagreement with the trial court with respect to the complainant's right to a divorce, and hold that on this issue, the bill was satisfactorily proven and a decree will be here entered granting same.

It is also argued for the appellant, that the evidence established that the child, though born in wedlock, was not his own, and he therefore should be relieved from responsibility of its support. In this, we cannot agree. The uncontradicted evidence was that complainant and respondent had sexual intercourse on March 28, 1952, and were not married until May 29, 1952. The child was born December 2, of the same year. The only evidence tending to show that the complainant was not the father of the child was in the nature of an admission by the respondent (made before she married) that she had had sexual relations with men during January of 1952. It was these admissions that respondent testified were falsifications. Complainant's mother testified that respondent had said that her last menstrual period was the first of February, but there is no other evidence tending to establish this as a fact.

▇ When a child is born in wedlock the law raises a rebuttable presumption of its legitimacy. Jackson v. Jackson, 259 Ala. 267, 66 So.2d 745. The presumption attends even when it is shown the child was conceived out of wedlock. Jackson v. Thornton, 133 Tenn. 36, 179 S.W. 384; 10 C.J.S., Bastards, § 3. There seems to be some diversity of opinion as to the amount of proof necessary to overcome the presumption where there was a premarital conception (C.J.S., supra) but whatever may be the practical utility of the distinction, see Jackson v. Thornton, supra, we are constrained to hold that in the case before us, the complainant did not meet the burden of proof in disproving parentage of the child. "A licentious man cannot call upon a court of equity as a guarantor of the paternity of a child conceived in the lewdness of antenuptial intercourse." Westfall v. Westfall, 100 Or. 224, 237, 197 P. 271, 275, 13 A.L.R. 1428.

It results, therefore, as our conclusion that the trial court decreed correctly as to the paternity of the child and in ordering complainant to pay for its support. We also think the sum of Twenty-five ($25.00) dollars per month, payable to respondent, reasonable amount for the child's support,

so the decree on this issue will be ordered affirmed, and the cause remanded to the lower court for execution of this phase of the decree.

Let all of the costs be divided equally between the parties.

Affirmed in part and in part reversed, rendered and remanded.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ. concur.