77 So.2d 477

Rose Stephens ARTHUR

v.

William D. ARTHUR.

3 Div. 681.

Supreme Court of Alabama.

Jan. 20, 1955.

Azar & Campbell, Montgomery, for appellant.

Albert L. Roemer, Montgomery, for appellee.

MAYFIELD, Justice.

This is an appeal from a decree of divorce in favor of the husband.

The trial court entered a decree dissolving the bonds of matrimony existing between the complainant and the respondent and bastardizing their infant daughter. Neither of the parties was before the court, and the evidence consisted of the bare deposition, interrogatories and exhibits of complainant and respondent; with the exception of complainant's sister who appeared and testified orally only as to complainant's residence and good character. The original complaint was filed by the husband-complainant against the wife-respondent on the grounds of adultery. The complaint was later amended to include a charge of pregnancy without the knowledge or agency of the husband.

The record discloses that William D. Arthur was living with his mother in Montgomery, Alabama, and enlisted in the United States Navy on or about June 29, 1944. Complainant, a Navy career man, while serving with the Navy in California, married Rose Stephens Arthur on February 17, 1951. A daughter was born on September 25, 1951, at the United States Hospital in California. The husband signed the California birth certificate certifying himself to be the father of the child, and gave the hospital authorities all other information required concerning his wife and the child.

According to official Naval itinerant records, the complainant returned to California on January 14, 1951, and remained until February 21, 1951, and according to appellant's testimony the parties engaged in sexual relations almost daily from 23 January 1951 until 17 February 1951, on which date they were married after the doctor advised the respondent that she was pregnant. Complainant lived off of the Naval Base in California with the

respondent. They have never resided in the State of Alabama.

According to the complainant's deposition, he caught his wife in an act of sexual intercourse with another man on two different occasions. The respondent answered the allegations of adultery and the amended bill, including the allegation of pregnancy without the knowledge or agency of the husband, by denying both charges.

Several issues were raised and argued on this appeal, but in the interest of brevity, we waive consideration of those not necessary to this decision. We find the controlling questions to be (1) whether the trial court had jurisdiction of this cause, and (2) whether the evidence was sufficient to sustain a decree on the grounds of pregnancy at the time of marriage without the knowledge or agency of the husband and thereby bastardize complainant's infant daughter.

The complainant's sister gave no testimony as to the matters which were embodied in the decree of the trial court. This decree was not based upon evidence heard orally by the presiding judge, and therefore, there is no presumption as to the correctness of the decree in that respect. Jones v. Stollenwerck, 218 Ala. 637, 119 So. 844; Harvey v. Phillips, 247 Ala. 134, 22 So.2d 900; Gardner v. Gardner, 248 Ala. 508, 28 So.2d 559; Butler v. Guaranty Sav. & Loan Ass'n, 251 Ala. 449, 37 So.2d 638; Boothe v. Reed, 229 Ala. 690, 159 So 218; H. H. Daniel Co. v. Brown, 18 Ala.App. 655, 94 So. 243; Mitchell v. Kinney, 242 Ala. 196, 5 So.2d 788.

The child was born on September 25, 1951. Complainant, in his own deposition, admitted intimacy with the respondent beginning January 23, 1951. The child was born some 246 days after the first admitted act of intercourse. Applying this factual situation to the medical testimony, approved by our court in Allred v. State, 151 Ala. 125, 128, 44 So. 60, 61:

"* * * the usual period of gestation is 280 days from the beginning of

the last menstrual flow; that a child is born, usually, in 270 days from the time of inception; that it may go over or under that time; that it runs from 240 to 300 days, * * *."

This evidence is not in conflict with the complainant's military log introduced into the record by the complainant.

The policy of the law is to confer legitimacy upon children born in wedlock where access of the husband to the wife at the time of conception is not impossible. This presumption was originally so strong that it could be rebutted only by testimony that the husband was incapable of procreating or was absent beyond the realm. Bullock v. Knox, 96 Ala. 195, 11 So. 339, 340; Franks v. State, 26 Ala.App. 430, 161 So. 549.

In Coke Upon Littleton, Vol. II, Chap. 6, Sect. 399, Lord Coke had this to say:

"But we terme them all by the name of bastards that are borne out of lawfull marriage. By the common law if the husband be within the foure seas, that is within the jurisdiction of the king of England, if the wife hath issue, no proofe is to be admitted to prove the childe a bastard, * * * unlesse the husband hath an apparent impossibilitie of procreation; as if the husband be but eight years old, or under the age of procreation, such issue is bastard, albeit he be borne within marriage. But if the issue be borne within a moneth or a day after marriage, betweene parties of full lawfull age, the child is legitimate."

The problem was treated in Blackstone Commentaries thus:

Mr. Justice Blackstone: "As if the husband be out of the kingdom of England (or, as the law somewhat loosely phrases it, extra quatuor moria) for above nine months, so that no access to his wife can be presumed, her issue during that period shall be bastards. But generally, during the coverture access of the husband shall be presumed unless the contrary can

be shewn; which is such a negative as can only be proved by shewing him to be elsewhere: for the general rule is proesumitur pro legitimatione." 1 Blackstone Commentaries 457.

The rule of the "four seas" was relaxed in the case of Pendrell v. Pendrell, 2 Strange 925, in 1732 to allow the husband to introduce evidence of non access to his wife. In 1807, Lord Ellenborough held, in the case of King v. Luffe, 8 East 193, that where a child is born of a married woman, the husband is to be presumed to be the father, unless the presumption is overcome by evidence to show the absolute physical impossibility of the fact.

Our court, in the case of Sims v. Birden, 197 Ala. 690, 691, 73 So. 379, 380, 744, held in 1916 that: "A child born in lawful wedlock is presumed legitimate until the contrary is properly shown by the party who denies its legitimacy, and upon whom the burden then rests to sustain his denial. * * *"

The law of this state was well stated in the case of Carnegie v. Carnegie, 261 Ala. 146, 73 So.2d 556, 557: "When a child is born in wedlock the law raises a rebuttable presumption of its legitimacy. * * * The presumption attends even when it is shown the child was conceived out of wedlock." Our court, in this case, refused to make any distinction as to the burden of proof where there was a pre-marital conception.

The modern text writers have stated the proposition thus:

10 C.J.S., Bastards, § 3, p. 18: "The policy of the law is to confer legitimacy upon children born in wed-lock when access of the husband at the time of conception was not impos-sible, and there is a presumption that a child so born is the child of the hus-band and is legitimate, even though the wife was guilty of infidelity during the possible period of conception. In general, however, the presumption is not conclusive in the first instance and is rebuttable.

"So firm was this presumption orig-inally that it could not be rebutted unless the husband was incapable of procreation or was absent beyond the four seas, that is, absent from the realm, during the whole period of the wife's pregnancy. This strict rule was, however, relaxed and eventually repudiated or, at least, greatly modi-fied, and gave way to the modern doc-trine that the presumption may be rebutted by competent and relevant evidence showing that the husband could not have been the father of the child, * * *.

"* * * Even under the modern rule, however, the presumption is a strong one, one of the strongest and most persuasive known to the law, which means that, in addition to per-forming its essential function as a rule of evidence, the presumption, like the presumption of innocence, is ac-companied by another rule fixing the required measure of proof, and there is authority for the view that it is well-nigh conclusive and that it be-comes conclusive in the absence of any sufficient proof that the husband could not have been the father. * * *

* * * * * *

"* * * Even where the birth occurs so soon after marriage as to render it certain that it is the result of antenuptial conception, the presump-tion obtains that a child born in wed-lock is the child of the husband, and that such child is legitimate."

7 Am.Jur., Bastards, § 14, p. 636: "No principle of law is more firm-ly established than the principle that every child born in wedlock is pre-sumed to be legitimate. It was a maxim of the Roman Law, and one which the common law copied, that the presumption is that he is the father whom the marriage indicates, and Montesquieu, alluding to it, observed that 'the wickedness of mankind makes

it necessary for the laws to suppose them better than they really are. Thus we judge that every child conceived in wedlock is legitimate, the law having a confidence in the mother as if she were chastity itself.' D'Aguesseau laid it down that 'whilst the birth of children can be ascribed to a legitimate source, the law will not suppose criminality.' The early common-law rule in England was that if a wife had issue while her husband was within the four seas—that is, within the jurisdiction of the King of England—such issue was conclusively presumed to be legitimate, except upon proof of the husband's impotence; and even if he was beyond the four seas, he must have been away for so long a period before the birth of the child as to make it a natural impossibility that he could be the father. * * *"

7 Am.Jur., Bastards, § 16, p. 637: "Effect of Antenuptial Conception— Conception during wedlock is not essential to the presumption of legitimacy which arises from birth in wedlock. The presumption arises although the birth occurs so soon after marriage as to render it certain that it was the result of coition prior thereto. * * *"

The cases that support the text writers in the above general statements are legion. It would be impracticable and unduly burdensome to try to collect them. However, a sampling of these cases may serve to show how well established and firmly rooted are these principles in our jurisprudence.

"* * * Where the legitimacy of a child born in wedlock is questioned by the husband and reputed father, one of the strongest rebuttable presumptions known to the law is required to be overcome before the child can be bastardized. * * *" Eldridge v. Eldridge, 153 Fla. 873, 16 So.2d 163.

"* * * where there is opportunity for access it will be presumed that a child born in wedlock is legitimate, and the presumption is so great it cannot be overcome except by evidence of the strongest character, and so convincing as to remove the question of a reasonable doubt [of the child's legitimacy]. * * *" Ratliff v. Ratliff, 298 Ky. 715, 183 S.W.2d 949, 952.

"The presumption that a child born to married woman during wedlock is the child of her husband and legitimate is one of the strongest, most persuasive known to law and will not fail unless common sense and reason are outraged by holding that it abides." Hubert v. Cloutier, 135 Me. 230, 194 A. 303.

"The law presumes the legitimacy of a child born in lawful wedlock, and this includes one of antenuptial conception." State v. McMahan, 224 N.C. 476, 31 S.E.2d 357, 358.

"* * * proofs necessary to rebut a presumption of legitimacy must be of the highest order." In re Fink's Estate, 343 Pa. 65, 21 A.2d 883, 889.

"* * * notwithstanding the modern rule as to the legitimacy of children, the presumption of legitimacy remains one of the highest known to the law and not to be overcome except upon the highest proof; * * *." Franks v. State, 26 Ala.App. 430, 161 So. 549, 550.

Neither party was personally before the court. The interrogatory answers of the respondent have a ring of verity; and the answers of the complainant are evasive and equivocal. Complainant remembers with exactitude all facts that have probative value in his favor, but reverts to the standard "I do not remember" when asked to answer damaging interrogatories.

Why is the presumption of legitimacy considered one of the strongest of the law? The reason behind the rule is properly found in the consideration that in actuality the one that suffers the "slings and arrows" of this decree is the infant daughter,

unaware of this proceeding, and unable to protect herself. The older she grows, the deeper will burn the brand that this decree places upon her. The child that bears the full brunt of this decree is not even protected by a guardian ad litem.

We are equally cognizant of the injustice in requiring one man to support another man's child until maturity. However, in this cause we do not find that the evidence of the complainant's claim is either compelling or satisfying.

Since this cause must be reversed for the reasons above, we see no benefit that would accrue to the parties by writing to the question of the conflicting presumptions of domicile, or the question of the sufficiency of the quantum of proof of domicile, which were so ably briefed and argued by the counsels for the parties. It therefore follows that this cause is due to be, and is, reversed and remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.