360 So.2d 710 (1978)
Gladys Ann LEONARD, a minor, etc., et al.
v.
Bernice LEONARD.
77-102.
Supreme Court of Alabama.
June 23, 1978.
*711 John E. Enslen, Wetumpka, for appellants.
George P. Howard of Howard & Dunn, Wetumpka, for appellee.
SHORES, Justice.
Darcus Welcher and Leroy Wilcox were married in the State of Georgia in 1946. Darcus left Leroy in 1947 and returned to Alabama, but they were never divorced insofar as the record shows. Leroy Wilcox died in Georgia in 1975.
While living in Eclectic, Alabama, in 1952, Darcus met Carl Leonard and, according to her testimony, entered into an adulterous relationship with him, which lasted until his death on April 22, 1976. Throughout this time, Leonard was legally married but had no children by his wife. There were, however, four children born to Darcus Welcher Wilcox during this twenty-four-year association with Leonard. In 1972, Leonard signed and recorded a declaration of legitimation in the Probate Court of Elmore County for each of these four children pursuant to Title 27, § 11, Code 1940, Recompiled *712 1958 (now § 26-11-2, Code 1975), which provides:
"The father of a bastard child may legitimate it and render it capable of inheriting his estate by making a declaration in writing, attested by two witnesses, setting forth the name of the child proposed to be legitimated, its sex, supposed age and the name of the mother and that he thereby recognizes it as his child and capable of inheriting his estate, real and personal, as if born in wedlock. The declaration being acknowledged by the maker before the judge of probate of the county of his residence or its execution proved by the attesting witnesses, filed in the office of the judge or probate and recorded on the minutes of his court has the effect to legitimate such child. A certified copy of the minutes of the court shall be sent by the judge of probate to the bureau of vital statistics, state board of health and to the registrar of vital statistics of the county within 30 days after the minutes are recorded."
Upon Leonard's death intestate in 1976, the four children born to Darcus claimed an interest in his estate under the laws of descent and distribution and the legitimation statute. They filed a petition for sale for division of thirty-four acres of land owned by Leonard and located in Elmore County.
Leonard's wife contested this sale and claimed her homestead rights. She maintains that these four children are not Leonard's offspring but are the legitimate children of Leroy Wilcox. As such, the children may not be legitimated under a statute which speaks only of legitimation by a father of "bastards." The children amended their complaint to dismiss the original claim without prejudice and substituted for it a petition for declaratory judgment to determine whether they are Leonard's legal heirs. This issue was tried to the court without a jury. The children attempted to introduce evidence pertaining to Darcus' relationship with Leonard, Darcus and Leonard's cohabitation at the time of conception of each of the children, the normal length of her gestation period, physical similarities of appearance between Leonard and the children, the general reputation in the community and among families of Darcus and Leonard that the children were illegitimate, and that Carl Leonard was the father. The trial court refused to admit this testimony into evidence. After the hearing, the court held that the declarations of legitimation filed by Leonard were void and that the children were the legitimate offsprings of Leroy Wilcox. The children appealed from that order.
They argue that the trial court erred in refusing to admit evidence which tended to show that Leonard was their father; and that the court's judgment was against the great weight of the evidence.
It is a long-standing rule of the common law, and one frequently recognized in this state, that a child born to a married woman is presumed to be the legitimate offspring of her husband. Carnegie v. Carnegie, 261 Ala. 146, 73 So.2d 556 (1954); Sims v. Birden, 197 Ala. 690, 73 So. 379 (1916). Thus, the children of Darcus Welcher Wilcox are presumed to be the legitimate children of her husband, Leroy Wilcox, and are not "bastards" within the meaning of the legitimation statute. Balance v. Balance, 261 Ala. 97, 72 So.2d 851 (1954); Jackson v. Jackson, 259 Ala. 267, 66 So.2d 745 (1953). This presumption of legitimation may be rebutted by clear and convincing evidence which tends to show that it is naturally, physically, or scientifically impossible for the husband to be the father. Arthur v. Arthur, 262 Ala. 126, 77 So.2d 477 (1955); Warren v. State, 26 Ala.App. 284, 158 So. 770 (1935).
The legitimation statute refers to "bastards." This term applies not only to a child born out of wedlock, but also to a child born in wedlock but sired by a man who was not the mother's husband. 10 C.J.S. Bastards § 1, p. 7. Had the appellants rebutted the presumption that Leroy Wilcox was their natural father, they would be legally recognized as bastards. Since the statute does not require a prior legal determination of illegitimacy, the declarations of *713 legitimation by Leonard would be effective to make them his legitimate children, capable of inheriting his property.
The common law requirement, limiting the evidence to proof that the husband was incapable of procreating or was "absent beyond the realm," has been relaxed. Bullock v. Knox, 96 Ala. 195, 11 So. 339 (1892). Any evidence which is competent and which tends to show clearly and convincingly that the husband could not be physically or biologically the father is now admissible. Arthur v. Arthur, supra; 10 C.J.S. Bastards § 3, p. 18. The husband and wife, however, are incompetent to testify that their children are illegitimate under the common law rule originally expressed by Lord Mansfield in Goodright v. Moss, 2 Cowp. 591 (1777). This rule prevents testimony by the wife which would establish the illegitimacy of children born in wedlock. It does not, however, prevent the wife from testifying to circumstances from which nonaccess by her husband and the impossibility of his parenthood may be inferred. Franks v. State, 26 Ala.App. 430, 161 So. 549 (1935).
Under the authority of these cases, the appellants had to prove impossibility of access by the introduction of some evidence tending to show that Leroy Wilcox could not have had sexual relations with Darcus Wilcox at the probable time of conception for each of the four children. They failed to meet this burden. The appellants directed their entire efforts at trial toward proving that Carl Leonard was their father. The only evidence offered which was directed toward proving that Leroy Wilcox could not have been their father was testimony by Darcus that she had not seen Leroy since 1947. This was unsupported by any other evidence, either in the record or in the testimony which the trial court refused to admit. Of this latter testimony, the only fact sought to be introduced which could have had any bearing on the impossibility of Wilcox' parenthood was Darcus' testimony concerning the duration of her gestation period. Appellants maintain that this testimony would have set a predicate for evidence showing the impossibility of access. They did not, however, make any offer of proof to that effect at the time her testimony was taken. The trial court cannot be reversed for sustaining the appellee's objection to this testimony without a showing that such an offer of proof was made. Birmingham Ry. Light & Power Co. v. Selhorst, 165 Ala. 475, 51 So. 568 (1910); C. Gamble, McElroy's Alabama Evidence, § 425.01(10), at p. 78 (3d ed. 1977). The testimony excluded by the trial court related only to Leonard's paternity of the appellants and in no way tended to refute the possibility of Wilcox' paternity testimony. The trial court properly disallowed this testimony.
Appellants finally argue that the judgment of the trial court was against the great weight of the evidence. The trial court heard the evidence ore tenus. Its findings have the force and effect of a jury verdict. We cannot disturb those findings in the absence of a showing that they are plainly and palpably wrong. Goodall v. Ponderosa Estates, Inc., 337 So.2d 726 (Ala.1976); Hackmeyer v. McConnell, 336 So.2d 1107 (Ala.1976).
The presumption of legitimacy in cases of this type is one of the strongest and most persuasive known to the law. Arthur v. Arthur, supra; 10 C.J.S. Bastards § 3, p. 18. As a consequence, the measure of proof required to rebut such a presumption is great. We agree with the trial court that the evidence was insufficient to meet this burden.
AFFIRMED.
BLOODWORTH, FAULKNER and JONES, JJ., concur.
TORBERT, C. J., and BEATTY, J., concur specially.
MADDOX, ALMON and EMBRY, JJ., dissent.
TORBERT, Chief Justice (concurring specially):
I concur in the result reached by the majority only because a thorough review of *714 the record shows that appellants, in this particular case, failed to offer clear and convincing evidence tending to show that it was naturally, physically or scientifically impossible for Leroy Wilcox to be their natural father. I agree with the majority that the testimony by Darcus Wilcox that she had not seen Leroy Wilcox since 1947 was insufficient to rebut the presumption of legitimacy. Furthermore, the remainder of the evidence proffered by the appellants, including that excluded by the trial court, was not pertinent to the issue here because such evidence related only to the question of Carl Leonard's paternity of the appellants and did not overcome the presumption of Leroy Wilcox's paternity of appellants.
BEATTY, J., concurs.
MADDOX, Justice (dissenting).
In Coke Upon Littleton, Vol. 2, Chap. 6, Sec. 399, Lord Coke had pronounced the following:
"By the common law if the husband be within the foure seas, that is within the jurisdiction of the King of England if the wife hath issue, no proofe is to be admitted to prove the childe a bastard. . . ." (Emphasis added.)
Today, the majority reapplies Lord Coke's rule, even though this Court, almost one hundred years ago, described the old restrictive rule as "exploded:"
"The ancient common-law authorities declared the issue of every married woman to be legitimate, except in the two special cases of the impotency of the husband and his absence from the realm.
. . . The inference is excluded that the charge of illegitimacy rests either upon the impotency of the husband or upon the impossibility of his access to the wife during the period when she became pregnant. If the rule above stated prevails, the particular case alleged in the bill is not one in which the law permits the presumption of legitimacy to be disputed, and Ben Knox must be treated as the son of his mother's husband. But that rule has long since been exploded. It operated in many cases to make a man, in law, the father of children who were obviously not his in fact. The rule was first relaxed by permitting the conclusion of illegitimacy to be drawn in certain other special classes of cases in which legitimacy was impossible. It was seen that there were other cases, not included in the common-law classification, in which it was impossible that the husband could be the father of a child born of his wife during their marriage. Finally, the simple rule was recognized that a child is a bastard, though born, or begotten and born, during marriage, when it is impossible that its mother's husband could have been its father; and that every species of legal evidence tending to this conclusion is admissible on the trial of the issue as to its legitimacy. The question of legitimacy is simply one of fact. The modern authorities sustain the propositions, that the presumption of legitimacy from the birth of a child during marriage may be rebutted by evidence which clearly and conclusively shows that the procreation by the husband was impossible; and that it is competent to show that, according to the course of nature, the husband could not be the father of the child . . . ." Bullock v. Knox, 96 Ala. 195, 11 So. 339 (1892).
By 1938 this Court could unhesitatingly declare that:
"It has long been established that the presumption of legitimacy from marriage may be rebutted." (Emphasis Added). McCrary v. Matthews, 234 Ala. 409, 179 So. 367 (1938).
In 1950, this Court held in the case of Butler v. Butler, 254 Ala. 375, 48 So.2d 318 (1950), that the presumption of legitimacy is not conclusive:
"It is without dispute that the children were born during the wedlock of Marie Butler and Sam Butler. This accordingly raises a presumption of legitimacy. This presumption, however, is not conclusive." (Emphasis added.)
The well established rule now fully evolved was pronounced again in 1953 in *715 the case of Jackson v. Jackson, 259 Ala. 267, 66 So.2d 745 (1953):
"Without dispute, the infant here involved was born during the wedlock of Jessie Lee Jackson and Annie Maude Jackson. This, accordingly, raises a presumption of legitimacy. This presumption, however, is not conclusive." (Emphasis added.)
The case of Carnegie v. Carnegie, 261 Ala. 146, 73 So.2d 556, 557 (1954), stated the rule as follows:
"When a child is born in wedlock the law raises a rebuttable presumption of its legitimacy." (Emphasis added.)
In Arthur v. Arthur, 262 Ala. 126, 77 So.2d 477 (1955), this Court quoted with approval the following rule as pronounced in 10 C.J.S. Bastards § 3, p. 18:
"The policy of the law is to confer legitimacy upon children born in wedlock when access of the husband at the time of conception was not impossible, and there is a presumption that a child so born is the child of the husband and is legitimate, even though the wife was guilty of infidelity during the possible period of conception. In general, however, the presumption is not conclusive in the first instance and is rebuttable.

"So firm was this presumption originally that it could not be rebutted unless the husband was incapable of procreation or was absent beyond the four seas, that is, absent from the realm, during the whole period of the wife's pregnancy. This strict rule was, however, relaxed and eventually repudiated, or at least greatly modified, and gave way to the modern doctrine that the presumption may be rebutted by competent and relevant evidence showing that the husband could not have been the father of the child . . ." (Emphasis added.)
Thus we see there is no legal objection to testimony on the ground that it tends to "bastardize" or make the plaintiff children "illegitimate." To the contrary, every species of legal evidence tending to the conclusion of legitimacy is admissible on the trial of such issue. The question of legitimacy is one of fact, and the presumption of legitimacy may be rebutted by relevant evidence.
The majority admits that the term "bastard" in Alabama's Legitimation of Children Statute (Title 27, § 11, Code, 1940, Recomp. 1958, now, § 26-11-2, Code, 1975) applies not only to a child born out of wedlock but also to a child born in wedlock but sired by a man who was not the mother's husband. The reputed natural father, Leonard, took every step required by law to "legitimate" these children, and the evidence here, a great deal of which the court would not admit, was overwhelming to rebut any presumption that these children were sired by Leroy Wilcox. A summary of that evidence showed:
1. Carl Leonard complied in every respect and formality with the statutory requirements of Title 27, Section 11, Code of Alabama, 1940, Recomp. 1958, to legitimate the children.
2. Darcus Wilcox testified that she had not seen Leroy Wilcox since 1947.
The trial judge refused to allow evidence on the following factual points:
1. Written and oral statements by Carl Leonard that he is the natural father of the plaintiff children.
2. That Carl Leonard was living in the same household with plaintiff children's mother, Darcus Wilcox, at the time of the conception of Luther Warren Leonard.
3. That Carl Leonard paid the rent on the house inhabited by plaintiff children and their mother.
4. That it is the general reputation in the community where the plaintiff children and their mother live that Carl Leonard is the natural father of the plaintiff children.
5. That defendant widow, Bernice Leonard, has introduced the plaintiff children to her relatives as belonging to Carl Leonard.
6. That defendant widow testified under oath in a court of law that Darcus Wilcox was having children by her husband, Carl Leonard.
7. That plaintiff children visited with Carl Leonard at his home.
*716 8. That plaintiff children visited with Carl Leonard at the hospital during his last illness.
9. That Carl Leonard gave the plaintiff children money and change from time to time for their own spending.
10. That plaintiff children called Carl Leonard "Daddy."
11. That defendant widow, Bernice Leonard, has admitted to a third party that Carl Leonard is the natural father of plaintiff children.
12. That Leroy Wilcox, the husband of Darcus Wilcox, who lived in Georgia, never even saw their second son who was born in 1948 and who was burned to death at age five.
13. That Darcus Wilcox, the plaintiff children's mother, had a normal nine-month gestation period with each of the plaintiff children.
14. That plaintiff children were uniformly received in society and acknowledged by the family of Darcus Wilcox as the children of Carl Leonard.
15. That Carl Leonard was in the presence of Darcus Wilcox when she gave birth to one or more of the plaintiff children.
16. That Carl Leonard went after and brought back the midwife that delivered one of the plaintiff children.
17. That there is a specific point of resemblance physically between the four plaintiff children and Carl Leonard.
18. That Darcus Wilcox, plaintiff children's mother, had sexual intercourse with Carl Leonard approximately nine months prior to the birth of each of plaintiff children.
19. That Carl Leonard lived with Darcus Wilcox, the mother of the four plaintiff children, in her house at a time preceding the birth of each of the plaintiff children by approximately nine months.
20. That Carl Leonard ate his meals with Darcus Wilcox in her home from 1952 until after the birth of the youngest plaintiff child.
21. That Carl Leonard bought groceries for Darcus Wilcox and the four plaintiff children between the years 1952 and 1969.
22. That Carl Leonard bought clothes and gave them to the four plaintiff children.
23. That Carl Leonard paid the rent on the home in which Darcus Wilcox and the four plaintiff children resided.
24. That it is the general reputation in the family of Carl Leonard that plaintiff children were born illegitimate.
25. That no other male has had access to the body of Darcus Wilcox other than Carl Leonard since January 1, 1952.
26. That Carl Leonard referred to the four plaintiff children in speaking to them as "my children."
I am quite aware of the presumption of legitimacy conferred on children born to a married woman, but the evidence is simply overwhelming here that Leroy Wilcox was neither the reputed nor natural father of these children. Consequently, I dissent.
ALMON and EMBRY, JJ., concur.