Darcus Welcher and Leroy Wilcox were married in the State of Georgia in 1946. Darcus left Leroy in 1947 and returned to Alabama, but they were never divorced insofar as the record shows. Leroy Wilcox died in Georgia in 1975.
While living in Eclectic, Alabama, in 1952, Darcus met Carl Leonard and, according to her testimony, entered into an adulterous relationship with him, which lasted until his death on April 22, 1976. Throughout this time, Leonard was legally married but had no children by his wife. There were, however, four children born to Darcus Welcher Wilcox during this twenty-four-year association with Leonard. In 1972, Leonard signed and recorded a declaration of legitimation in the Probate Court of Elmore County for each of these four children pursuant to Title 27, § 11, Code 1940, Recompiled *Page 712 
1958 (now § 26-11-2, Code 1975), which provides:
 "The father of a bastard child may legitimate it and render it capable of inheriting his estate by making a declaration in writing, attested by two witnesses, setting forth the name of the child proposed to be legitimated, its sex, supposed age and the name of the mother and that he thereby recognizes it as his child and capable of inheriting his estate, real and personal, as if born in wedlock. The declaration being acknowledged by the maker before the judge of probate of the county of his residence or its execution proved by the attesting witnesses, filed in the office of the judge or probate and recorded on the minutes of his court has the effect to legitimate such child. A certified copy of the minutes of the court shall be sent by the judge of probate to the bureau of vital statistics, state board of health and to the registrar of vital statistics of the county within 30 days after the minutes are recorded."
Upon Leonard's death intestate in 1976, the four children born to Darcus claimed an interest in his estate under the laws of descent and distribution and the legitimation statute. They filed a petition for sale for division of thirty-four acres of land owned by Leonard and located in Elmore County.
Leonard's wife contested this sale and claimed her homestead rights. She maintains that these four children are not Leonard's offspring but are the legitimate children of Leroy Wilcox. As such, the children may not be legitimated under a statute which speaks only of legitimation by a father of "bastards." The children amended their complaint to dismiss the original claim without prejudice and substituted for it a petition for declaratory judgment to determine whether they are Leonard's legal heirs. This issue was tried to the court without a jury. The children attempted to introduce evidence pertaining to Darcus' relationship with Leonard, Darcus and Leonard's cohabitation at the time of conception of each of the children, the normal length of her gestation period, physical similarities of appearance between Leonard and the children, the general reputation in the community and among families of Darcus and Leonard that the children were illegitimate, and that Carl Leonard was the father. The trial court refused to admit this testimony into evidence. After the hearing, the court held that the declarations of legitimation filed by Leonard were void and that the children were the legitimate offsprings of Leroy Wilcox. The children appealed from that order.
They argue that the trial court erred in refusing to admit evidence which tended to show that Leonard was their father; and that the court's judgment was against the great weight of the evidence.
It is a long-standing rule of the common law, and one frequently recognized in this state, that a child born to a married woman is presumed to be the legitimate offspring of her husband. Carnegie v. Carnegie, 261 Ala. 146, 73 So.2d 556
(1954); Sims v. Birden, 197 Ala. 690, 73 So. 379 (1916). Thus, the children of Darcus Welcher Wilcox are presumed to be the legitimate children of her husband, Leroy Wilcox, and are not "bastards" within the meaning of the legitimation statute.Balance v. Balance, 261 Ala. 97, 72 So.2d 851 (1954); Jacksonv. Jackson, 259 Ala. 267, 66 So.2d 745 (1953). This presumption of legitimation may be rebutted by clear and convincing evidence which tends to show that it is naturally, physically, or scientifically impossible for the husband to be the father.Arthur v. Arthur, 262 Ala. 126, 77 So.2d 477 (1955); Warren v.State, 26 Ala. App. 284, 158 So. 770 (1935).
The legitimation statute refers to "bastards." This term applies not only to a child born out of wedlock, but also to a child born in wedlock but sired by a man who was not the mother's husband. 10 C.J.S. Bastards § 1, p. 7. Had the appellants rebutted the presumption that Leroy Wilcox was their natural father, they would be legally recognized as bastards. Since the statute does not require a prior legal determination of illegitimacy, the declarations of *Page 713 
legitimation by Leonard would be effective to make them his legitimate children, capable of inheriting his property.
The common law requirement, limiting the evidence to proof that the husband was incapable of procreating or was "absent beyond the realm," has been relaxed. Bullock v. Knox, 96 Ala. 195,11 So. 339 (1892). Any evidence which is competent and which tends to show clearly and convincingly that the husband could not be physically or biologically the father is now admissible. Arthur v. Arthur, supra; 10 C.J.S. Bastards § 3, p. 18. The husband and wife, however, are incompetent to testify that their children are illegitimate under the common law rule originally expressed by Lord Mansfield in Goodright v. Moss, 2 Cowp. 591 (1777). This rule prevents testimony by the wife which would establish the illegitimacy of children born in wedlock. It does not, however, prevent the wife from testifying to circumstances from which nonaccess by her husband and the impossibility of his parenthood may be inferred. Franks v.State, 26 Ala. App. 430, 161 So. 549 (1935).
Under the authority of these cases, the appellants had to prove impossibility of access by the introduction of some evidence tending to show that Leroy Wilcox could not have had sexual relations with Darcus Wilcox at the probable time of conception for each of the four children. They failed to meet this burden. The appellants directed their entire efforts at trial toward proving that Carl Leonard was their father. The only evidence offered which was directed toward proving that Leroy Wilcox could not have been their father was testimony by Darcus that she had not seen Leroy since 1947. This was unsupported by any other evidence, either in the record or in the testimony which the trial court refused to admit. Of this latter testimony, the only fact sought to be introduced which could have had any bearing on the impossibility of Wilcox' parenthood was Darcus' testimony concerning the duration of her gestation period. Appellants maintain that this testimony would have set a predicate for evidence showing the impossibility of access. They did not, however, make any offer of proof to that effect at the time her testimony was taken. The trial court cannot be reversed for sustaining the appellee's objection to this testimony without a showing that such an offer of proof was made. Birmingham Ry. Light Power Co. v. Selhorst,165 Ala. 475, 51 So. 568 (1910); C. Gamble, McElroy's Alabama Evidence, § 425.01 (10), at p. 78 (3d ed. 1977). The testimony excluded by the trial court related only to Leonard's paternity of the appellants and in no way tended to refute the possibility of Wilcox' paternity testimony. The trial court properly disallowed this testimony.
Appellants finally argue that the judgment of the trial court was against the great weight of the evidence. The trial court heard the evidence ore tenus. Its findings have the force and effect of a jury verdict. We cannot disturb those findings in the absence of a showing that they are plainly and palpably wrong. Goodall v. Ponderosa Estates, Inc., 337 So.2d 726 (Ala. 1976); Hackmeyer v. McConnell, 336 So.2d 1107 (Ala. 1976).
The presumption of legitimacy in cases of this type is one of the strongest and most persuasive known to the law. Arthur v.Arthur, supra; 10 C.J.S. Bastards § 3, p. 18. As a consequence, the measure of proof required to rebut such a presumption is great. We agree with the trial court that the evidence was insufficient to meet this burden.
AFFIRMED.
BLOODWORTH, FAULKNER and JONES, JJ., concur.
TORBERT, C.J., and BEATTY, J., concur specially.
MADDOX, ALMON and EMBRY, JJ., dissent.