MADDOX, Justice
(dissenting).
With the presentation of this case, this Court was given the opportunity to reconsider its opinion in Leonard v. Leonard, 360 So.2d 710 (Ala.1978). In that case, I voiced my disagreement with the Court’s treatment of the very same issue which confronts us now, viz., what effect will the law give to the common-law presumption that children born during coverture are presumed to be the lawful issue of the husband. Unfortunately, the Court’s treatment of this issue has not changed in the nearly two years which have elapsed since Leonard; neither has my view that Leonard is wrong. Yet, in light of the serious constitutional ramifications involved, I feel compelled to reassert, with greater force and against a backdrop of recent decisions which guarantee equal protection of the law to illegitimates, my deep concern over the Court’s determination.
Realistically speaking, this case requires for its adjudication the resolution of a single question of fact. That question is, was the decedent, Clarence W. Lewis, the father of the petitioner, Shirley Lewis Rumlin? If it is found that he was her father, the petitioner will be fully entitled to partake in the assets of his estate. If it is found that he was not her father, the petitioner is as a stranger and her claim is without merit. Thus, upon the resolution of this single issue of fact rests the entire merits of the petitioner’s claim.
In support of her claim and in an effort to sway the resolution of the factual issue in her favor, the petitioner presents some compelling evidence. The most cogent piece of evidence presented was a document which purported to be a certified copy of a declaration of paternity, signed by the putative father, acknowledged by two witnesses, and filed with the Bureau of Vital Statistics. It is absolutely clear that this document was executed by the putative father for the express purpose of legitimating the petitioner under Ala.Code, Tit. 27, § 11 (1958), now Code 1975, § 26 — 11—2; however, since the declaration was not spread upon the minutes of the Houston County Probate Court, it did not meet all the statutory requirements, and, therefore, did not have the effect of legally legitimating the petitioner. Nevertheless, the document stands as an important piece of evidence bearing upon the factual issue of Mr. Lewis’ parentage.
The petitioner also presented other less reliable forms of evidence. She presented her birth certificate upon which Mr. Lewis was listed as her father. Likewise, she offered the testimony of her mother, Lillie Mae Kimball, who testified that Mr. Lewis was the petitioner’s natural father. Mrs. Kimball also testified to the effect that she had not seen the petitioner’s presumed father (Mrs. Kimball’s husband at the time) since he returned from overseas duty during World War II. Taken as a whole, this evidence is substantial and highly persuasive.
In responding to these facts, the respondents do not offer any substantive evidence. Instead, they rely wholly upon a common- *197 law presumption, a presumption whose operative effect would have the petitioner presumed to be the daughter of her mother’s husband. It is not disputed that this presumption is still adhered to in Alabama, the most recent expression of its vitality being found in Leonard, supra; however, the presumption no longer carries the conclusive effect it once enjoyed under the common law. Its effect has been gradually diminished as more and more courts have come to recognize the archaic mold into which it is cast. As far as its effect in Alabama is concerned, the presumption is not conclusive and may be rebutted upon the introduction of proper evidence. Carnegie v. Carnegie, 261 Ala. 146, 73 So.2d 556 (1954); Arthur v. Arthur, 262 Ala. 126, 77 So.2d 477 (1955). The question then becomes, is the proper evidence presented here?
As noted by this Court in its decision in Bullock v. Knox, 96 Ala. 195, 11 So. 339 (1892), the question of paternity is one of fact, not law; and, as fact, it can be established by clear and conclusive evidence. The majority, in relying on Leonard, equates clear and conclusive evidence with evidence establishing natural, physical or scientific impossibility. Such has long been abolished as the proper rule. Chief Justice Marshall espoused the following as early as 1825:
“The presumption of law is in favor of the legitimacy of a child born in wedlock, but . . this presumption may be rebutted by other testimony, which does not go to the full extent of absolute impossibility.” Stegall v. Stegall, 2 Brock 256, Fed.Cas.No.13,351 (1825).
I believe the necessity of showing impossibility is an unfortunate antiquated holdover from the common-law rule. When followed it operates to accomplish the assertion of legalistic form over practical fact. I, therefore, cannot agree with the majority that such is the proper test to be applied.
The majority’s decision today becomes even more troubling when it is considered in light of recent Supreme Court decisions establishing the constitutional rights of ille-gitimates. At common law, the illegitimate was without numerous substantive rights. He was considered nullius filius, one without kindred and without any ancestor from whom he could derive inheritable blood. This position gradually changed as courts came to recognize the severe inequities involved in its application. In its stead grew beliefs that illegitimates were like any other human being, entitled to the same rights and privileges which others enjoyed. Such beliefs prompted the Court in Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), to hold:
“We start from the premise that illegitimate children are not ‘nonpersons.’ They are humans, live, and have their being. They are clearly ‘persons’ within the meaning of the Equal Protection Clause of the Fourteenth Amendment.
******
“Why should the illegitimate child be denied rights merely because of his birth out of wedlock? He certainly is subject to all the responsibilities of a citizen, including the payment of taxes and conscription under the Selective Service Act. How under our constitutional regime can he be denied correlative rights which other citizens enjoy?”
The answers to these questions were clear. A person’s family status is purely irrelevant as far as the 14th amendment is concerned. Thus, the petitioner, as an illegitimate, is entitled to the exact same privileges enjoyed by others, and, as recently asserted by the Court in Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), this includes the right to inherit property from the person known and proved to be the illegitimate’s father.
Levy and Trimble represent the culmination of a very gradual and slow process whereby the constitutional rights of illegiti-mates came to be recognized; however, by the majority’s holding today, the illegitimate is effectively deprived of these rights through the rigorous application of an outmoded common-law presumption, a presumption which was clearly rebutted by compelling facts in this case. The majority, *198 however, refuses to accept any facts on this issue until the petitioner rebuts the presumption by showing that it was impossible for her mother’s husband to have been her father. In taking this position, I think they err. As applied by the majority, the presumption is being used to deny the petitioner her constitutional right to inherit from one shown to be her father. In this way, she is being denied the equal protection of the law.
These constitutional ramifications cannot be ignored, and because of their existence, I must respectfully dissent from the majority opinion.
ALMON and EMBRY, JJ., concur.