ROBERT P. BRADLEY, Retired Appellate Judge.
The State of Alabama and Nellie Jo McKinney have filed a petition for the writ of mandamus in this court asking that Judge George N. Sims of the Talladega County Juvenile Court be ordered to set aside his order of February 21, 1990 granting the Rule 60(b)(6), A.R.Civ.P., motion of Henry Smoot in which he had requested relief from a November 15, 1977 paternity judgment.
In November 1977 Henry Smoot admitted that he was the father of a child to be born out of wedlock to Nellie Jo McKinney and agreed to pay $12.50 per week for the child’s support. In August 1987 the State of Alabama filed a petition in the Circuit Court of Talladega County asking that Henry Smoot be held in contempt for failure to pay child support. The amount of the child support arrearage was alleged to be $4,254.05. The matter was heard in September 1989, and the court ordered from the bench that the question of paternity would be reconsidered after blood tests were administered to Ms. McKinney, Mr. Smoot, and the child and the results of the tests were received by the court. The State and Ms. McKinney asked the court to reconsider its order that blood tests be administered to the parties.
On February 6, 1990 Smoot filed a Rule 60(b)(6) motion asking that the November 1977 judgment finding that Smoot was the *367 father of Ms. McKinney’s child and requiring him to support the child be set aside. Smoot’s Rule 60(b)(6) motion was granted by the court on February 21, 1990. The court set aside and vacated the November 1977 paternity judgment and ordered Smoot to take a blood test to determine if Smoot is the father of Ms. McKinney’s child. The costs of the test are to be borne by the plaintiff.
The facts show that Smoot was married to Betty N. Simmons from 1961 to 1975. No children were born as a result of this marriage. In December 1977 Ms. McKinney filed a petition alleging that she was pregnant with Mr. Smoot’s child and requesting support. Ms. McKinney and Smoot were not married. Mr. Smoot admitted by affidavit that he was the father of the child and agreed to pay $12.50 per week for its support. The Talladega County Circuit Court found Smoot to be the father of Ms. McKinney’s unborn child and ordered him to pay support.
Mr. Smoot subsequently married again and when his second wife, Angela Smoot, was unable to conceive after about one year he sought medical advice. After examination and tests were made, Mr. Smoot’s physician said that Mr. Smoot was sterile due to the physiology of his testicles. The physician stated that he found no evidence of trauma to the testicles, nor did Smoot report that he had had mumps or an operation on his testicles. Mr. Smoot’s present wife, Angela Smoot, had conceived during a previous marriage but had miscarried.
In support of his Rule 60(b)(6) motion, Smoot argued that extraordinary circumstances exist which would warrant granting his motion. He noted that although his two marriages had not produced any children he had no cause to doubt that he was the father of Ms. McKinney’s child until his physician’s report in 1989.
Mr. Smoot argues that he has not waited an unreasonable length of time to question the 1977 paternity judgment because he did not have any reason to suspect he was sterile until his second wife could not conceive and he received his physician’s report. He cites this court to the case of Mitchell v. Morgan, 491 So.2d 981 (Ala.Civ.App.1986). In Mitchell we cited the case of Pittman v. Pittman, 397 So.2d 139 (Ala.Civ.App.), cert. denied, 397 So.2d 142 (Ala.1981), for the proposition that in deciding whether the Rule 60(b)(6) motion had been filed within a reasonable time after judgment it would be helpful for the trial court to consider the following: whether the delay in filing the motion has prejudiced the other party; whether third persons have relied on the judgment; whether it would be detrimental to them for the judgment to be altered; and whether the movant has a valid reason for not having filed his motion sooner.
In addition to the above, Smoot argues that equitable principles are available to a trial court to assist it in deciding a Rule 60(b)(6) motion to set aside a paternity judgment. And, he says that he will suffer irreparable harm and great hardship if relief is not granted to him.
The State of Alabama replies that paternity was decided in 1977, no appeal from that decision was taken, and the matter is now res judicata as to the parties.
The State further argues that Smoot’s relief from judgment motion should have been based on Rule 60(b)(2) rather than 60(b)(6) because Smoot is really arguing newly discovered evidence, i.e. that he did not learn that he was sterile until 1989. The State says that through due diligence Smoot could have learned that he was sterile in time to have moved for a rehearing of the November 1977 paternity judgment. Moreover, the State argues that proof of Smoot’s sterility in 1989 does not necessarily prove that he was sterile in 1977.
In Coburn v. Coburn, 474 So.2d 728 (Ala.Civ.App.1985), this court held that a Rule 60(b)(6) motion could be used to review and set aside a paternity judgment in a divorce case. More specifically, we said that such a motion “is available only where the movant shows that extreme hardship or injustice will result if relief from the judgment is not granted.” See also, Jones v. Jones, 525 So.2d 1380 (Ala.1988).
*368 The facts in Coburn reveal that the husband and wife submitted an agreement in their divorce action asserting that the child of the marriage was not fathered by the husband. After the divorce decree, the husband filed a Rule 60(b) motion alleging that he had reason to believe that he was the father of the child of the marriage and asked for blood tests to help determine paternity. The Rule 60(b) motion was granted, blood tests were ordered and, finally, after a hearing, the husband was determined to be the natural father of the child.
On appeal the mother claimed that the trial court abused its discretion in granting the Rule 60(b) motion, and she further claimed that the Rule 60(b) action was barred by res judicata because the issue of paternity had been decided by the divorce decree. This court affirmed the trial court’s judgment.
We are fully aware that in Coburn we said that, generally, paternity adjudications are res judicata and “will continue to be so, as in Stewart [v. Stewart, 392 So.2d 1194 (Ala.Civ.App.1980), cert. denied, 392 So.2d 1196 (Ala.1981),] where the issue is properly tried upon proof to judgment.” Coburn, 474 So.2d at 731. We further noted that since the husband was attempting to legitimize the child he and his wife had bastardized by the divorce agreement, principles of equity and justice allow the bastardizing decree to be set aside and the paternity issue to be retried. We also stated that “a decree ... entered solely upon the stipulation of the parties is without [the] necessary proof.... [T]he absence of such proof gives emphasis to the possible injustice and terrible wrong to be committed ... if the decree is not set aside.” Coburn, 474 So.2d at 730.
In the case at bar the facts show that Smoot admitted by affidavit that he was the father of Ms. McKinney’s unborn child, and he was adjudged to be the father, mainly on this evidence. There was no trial at which evidence was offered proving his paternity. In this case, the mere admission by Smoot that he was the father of the unborn child establishes little more than that Smoot apparently engaged in sexual intercourse with Ms. McKinney at a time contemporaneous with conception. Though the law places a presumption of paternity upon Smoot because of the admission, it would and should be fair and equitable to allow the more convincing evidence (i.e. blood tests) to rebut this presumption when paternity is in serious doubt. Thus a similar situation arises here, as in Coburn, because the decree to be overturned was not based upon the requisite “necessary proof.” Coburn, 474 So.2d at 730.
The facts in the present case further show that, although he had been through a childless marriage before he admitted to being the father of Ms. McKinney’s unborn child, Smoot had no reason, until his second wife was unable to conceive and he was examined by a physician in 1989, to believe that he could not be the father of the child in question.
Where the facts reveal that a man is sterile as a result of an apparent birth defect, it would be contrary to equity and justice for the court not to set aside an agreed-to paternity order and require blood tests to help establish the paternity of the child in question.
In Leonard v. Leonard, 360 So.2d 710 (Ala.1978), our supreme court held that the “presumption of legitimation may be rebutted by clear and convincing evidence which tends to show that it is naturally, physically, or scientifically impossible for the husband to be the father.”
Although Mr. Smoot said that he was the father of Ms. McKinney’s unborn child, the parties were not married and, thus, there was no common-law presumption of the child’s legitimacy. Leonard. Therefore, to say that the 1977 paternity order is res judicata and not subject to a Rule 60(b)(6) motion would be a terrible injustice to Smoot, especially in view of the medical testimony that he is sterile as a result of an apparent birth defect. Furthermore, the injustice would be compounded by the refusal to allow blood tests to either scientifically rebut or confirm his paternity of Ms. McKinney’s child. Exam- *369 pies of the clear and convincing proof necessary to overcome a paternity presumption are: impotence, sterility, or “lack of access” to the mother. See, e.g., Michael H. v. Gerald D., 491 U.S. -, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989) (under California statute); Adams v. State, 428 So.2d 117 (Ala.Civ.App.1983).
We are fully aware that the Rule 60(b)(6) motion has been authorized and used to prevent a child from being bastardized; but surely the same rationale could be used to prevent a man from being adjudged the father of a child of whom he could not naturally, physically, or scientifically be the father. Cf. Ex parte Presse, 554 So.2d 406 (Ala.1989) (the biological father and mother were not married at the time the child was conceived and born, but the mother was married to another man who was therefore presumed to be the father of the child). To allow such a result would certainly be as great a miscarriage of justice as it would be to allow a child to be bastardized. The importance of the use of presumptions to place a duty upon a man would obviously diminish in a situation where, as here, there was no “family unit” to protect from disruption. Ms. McKinney’s child was conceived and born out-of-wedlock and, if Smoot’s physician has not misdiagnosed his condition, then it would appear that Smoot is not the father of Ms. McKinney’s child.
In the case at bar, the evidence clearly shows that Smoot has a physiological defect that makes him sterile. To further assist the trial court in deciding whether Smoot is the father of the child in question, the trial court has ordered blood tests. We find no abuse of discretion on the part of the trial court in holding that the November 1977 paternity order is not res judicata and in granting the Rule 60(b)(6) motion and ordering blood tests to establish the paternity of the child. Since the trial court has already set aside and vacated the November 1977 paternity decree, it is no longer res judicata. Coburn.
Furthermore, we find no abuse of discretion by the trial court in holding that there had been no unreasonable delay by Smoot in filing his Rule 60(b)(6) motion. Neither do we find that the trial court abused its discretion in treating Smoot’s request as a Rule 60(b)(6) motion rather than a 60(b)(2) motion.
Although Smoot filed his Rule 60(b)(6) motion twelve years after the paternity decree, it is apparent that Ms. McKinney has not relied heavily on the support payments because she did not file her petition for the rule nisi until 1987. Smoot had paid very little money for the child’s support and it appears that Ms. McKinney alleged he was over $4200 in arrears.
Further, it appears that Smoot has a valid reason for not taking appropriate action at an earlier date. There is no evidence to indicate that Smoot knew or should have attempted to discover his condition.
As to whether Smoot waited too long to file his Rule 60(b)(6) motion, the trial court could have reasonably concluded that Smoot filed his motion within two or three months after he received the doctor’s report showing that he was sterile. Moreover, there is nothing in the record to suggest that Smoot had any idea that he was sterile until he received the doctor’s report. Consequently, we do not believe that the trial court abused its discretion in deciding that Smoot had filed his Rule 60(b)(6) motion within a reasonable time after the 1977 paternity judgment.
As noted above, Smoot had no idea he was sterile until he was examined by a physician in 1989. Consequently, there was no reason for him to seek a rehearing of the 1977 paternity judgment within thirty days of that judgment, nor was there a reason to file a Rule 60(b)(2) motion within four months of said judgment.
There was no apparent reason for Smoot to ever doubt his fertility. Indeed, since Ms. McKinney said that he was the father of her unborn child and he knew whether he had engaged in sexual intercourse with Ms. McKinney, a fair or reasonable conclusion for Smoot to draw would be that he was not sterile. Actually, at this late date, Smoot is saying to the court that his circumstances are so unique and exceptional *370 that to deny him relief would cause him to suffer extreme hardship and injustice.
We recognize that a Rule 60(b)(6) motion is a request for extraordinary relief from extraordinary circumstances. We believe the facts in the case at bar support the request for extraordinary relief authorized by Rule 60(b)(6).
The foregoing opinion was prepared by Retired Appellate Judge ROBERT P. BRADLEY while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
WRIT DENIED.
All the Judges concur.